STATE *vs.* CHARLES B. HOYT.

October Term, 1898.

Present: ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

Opinion filed January 26, 1898.

*License Fee, When a Tax.*—When a business or an occupation consists in selling goods, the exaction of a license fee for its pursuit is in effect the imposition of a tax upon the goods themselves; and a statute which,

like V. S. c. 198, exacts a license fee from the peddlers of goods, "the manufacture of this State," is unconstitutional as being an unjust discrimination against the products of this State.

*License Fee, When a Tax.*—That the peddler's license fee enacted by V. S. c. 198 is a tax for revenue purposes, further appears from the disposition made of the receipts thereunder, which for the first forty years of its existence went to the State, and for the last fifty years have gone to the counties on the basis of population.

*Unconstitutional Discrimination.*—The equality clause of the Fourteenth Amendment to the constitution of the United States, providing that no state shall deny to any person within its jurisdiction the equal protection of the laws, applies to a discrimination by the state against its own citizens, as well as to one in their favor.

*Classification Must Be Reasonable.*—Although the equality clause referred to does not prohibit classification for the purposes of taxation, it does require that the classification should be founded upon some reasonable basis; and such a basis is not found in the fact that the goods are manufactured in different states.

INDICTMENT under V. S. c. 198 for becoming a peddler without a license. At the June term, 1898, Orange county, *Start*, J., presiding, the demurrer to the indictment was overruled, *pro forma*, and the indictment and each count thereof adjudged sufficient. The respondent excepted.

*John H. Watson* for the respondent.

*Hale K. Darling*, State's Attorney, for the State.

ROWELL, J. The respondent is indicted for becoming a peddler without a license.

The statute on which the indictment is founded provides, that a person going from town to town or from place to place in a town, carrying to sell, or exposing for sale, goods composed in whole or in part of cotton, linen, woolen or silk, plated or gilded ware, jewelry, patent medicine, or a compound medicine the composition of which is kept secret from the public, watches or clocks, which are the manufacture of this State; and a person who transports such goods, wares or merchandise from town to town, or who comes from without the State into a town within the same, bringing such goods, wares or merchandise, and

in a town to which he transports or brings the same, temporarily exposes said goods, wares or merchandise for sale at auction or otherwise, at a public or a private house, store, or other place—shall be deemed a peddler. And it imposes a fine for becoming a peddler without a license in force; and requires the payment of a license fee, varying in amount from fifteen to sixty dollars, according to how the licensee travels and what he carries. V. S. c. 198.

We construe this statute to refer exclusively to the manufactures of this State. This construction is obvious when compared with it as it was in the Revised Laws. It then expressly included the manufactures of the United States. The language was, "which are the manufacture of the United States," instead of "this State," as now. In other respects it was the same then as now, except it then embraced goods, wares and merchandise that were the growth or manufacture of a foreign country, and excepted from its operation persons selling goods, wares or merchandise that were the manufacture of this State, except plated or gilded ware, jewelry, clocks and watches. But that exception was repealed in 1882, and the inclusion of articles of foreign growth or manufacture was held unconstitutional in *State* v. *Pratt,* 59 Vt. 590, as being a regulation of commerce and an imposition of a duty on imports. For some reason the Vermont Statutes substituted the words, "this State," for the words, "the United States," thus making the act refer exclusively to the manufactures of this State. Why this was done is not obvious. It may have been because it was thought that it would be unconstitutional to embrace the manufactures of other states, although put upon the same footing as the manufactures of this State. If so, it was a mistake, for it would have been entirely constitutional, as shown by *Machine Co.* v. *Gage,* 100 U. S. 676.

It can hardly be supposed that the intention was to discriminate against the manufactures of this State; and

yet that is the effect of the statute, if the license fee is to be regarded as a tax upon the goods authorized to be sold; and that it is to be so regarded cannot be questioned. Indeed we so held in *State* v. *Pratt*, above cited. And this is in accord with the decisions of the supreme court of the United States. Thus in *Brown* v. *Maryland*, 12 Wheat. 425, 444, the question was whether an act of the legislature of Maryland was constitutional that required importers of foreign goods to pay a license tax for selling them in the form and condition in which they were imported. It was contended on the part of the State that the tax was not imposed on the goods, but on the trade and occupation of selling them by wholesale after they were imported, and was laid upon the same principle as the usual taxes upon retailers, innkeepers, hawkers and peddlers, or upon any other trade exercised in the state. But the court said it was impossible to conceal the fact that this mode of taxation was only varying the form without varying the substance; that a tax on the occupation of an importer was a tax on importation, and must add to the price of the article, which must be paid by the consumer, or by the importer himself the same as a direct tax on the article; and the act was held unconstitutional, as being a duty on imports and a regulation of commerce. So in *Welton* v. *State of Missouri*, 91 U. S. 275, it was held that when a business or an occupation consists in selling goods, the exaction of a license fee for its pursuit is in effect the imposition of a tax upon the goods themselves; and a statute exacting a license fee from dealers in goods not the product nor manufacture of the state, before they could be sold from place to place in the state, was held unconstitutional, as being an unjust discrimination against the products of other states. In that case, as in *Brown* v. *Maryland*, it was sought to maintain the act on the ground that it imposed but an occupation tax. The court admitted the power of the states to impose taxes in the way of licenses upon all

pursuits and occupations within their limits, but said that the power must be exercised in subordination to the requirements of the Federal Constitution. The same doctrine was held in the *License Tax Cases*, 5 Wall. 462.

Judge *Cooley* says that every burden that a state imposes upon its citizens with a view to revenue, either for itself, or for any of the municipal governments, or for the support of the governmental machinery in any of the political divisions, is imposed under the power of taxation, whether done under the name of tax, or under some other name; that the license fees that are sometimes required to be paid by those who follow particular employments are, when for the purpose of revenue, taxes. Constitutional Lim. (6th ed.) 611. According to this, the license fee in question is a tax; for that it is imposed for revenue appears from the fact that for the first forty years of the existence of the statute the money received thereunder went to the State, and for the last fifty years and more it has gone to the counties on the basis of population.

Thus it appears that the statute imposes a tax upon the goods themselves when peddled. This being so, we have said that it discriminates against the manufactures of this State, and that is true. To illustrate: A manufactures watches in Vermont, and B manufactures precisely the same kind and grade of watches in New Hampshire. Each peddles his goods in Vermont. A pays a license fee of sixty dollars for each of his peddlers, while B pays no license fee for his. A's goods are discriminated against.

Now the equality clause of the Fourteenth Amendment provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. The respondent invokes this clause, and says that the statute is obnoxious to it by reason of its discrimination.

But it has been held that in respect of taxation, that clause was not intended to compel a state to adopt an iron rule of taxation; nor to prevent the classification of

property for taxation at different rates; nor to prohibit legislation in that regard, special either in the extent to which it operates or the objects sought to be obtained by it; that it is enough that there is no discrimination in favor of one as against another of the same class. *Giozza* v. *Tiernan*, 148 U. S. 657. Such discrimination impairs that equal right that all can claim in the enforcement of the law. *Soon Hing* v. *Crowley*, 113 U. S. 703, 709.

The question, therefore, is one of classification. If, in the case supposed, the resident and the non-resident manufacturer or their goods can be differently classed, the statute can be sustained; otherwise, not. The rule on this subject is, that the mere fact of classification is not enough to exempt a statute from the operation of the equality clause of said Amendment, but that in all cases it must appear, not only that a classification has been made, but that it is one based on some reasonable ground, some difference that bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection. *Gulf, Colorado & Santa Fe R. Co.* v. *Ellis*, 165 U. S. 150.

Under this rule it seems impossible to make a classification here, for want of a sufficient ground on which to base it. It cannot be based on any difference in the goods themselves, for they are precisely alike; nor on the fact that they were made in different states, for that bears no just and proper relation to a classification, but is purely arbitrary. It cannot be based on public policy; for it is not reasonable to say that it is for our interest to encourage the introduction and sale of the goods of the non-resident manufacturer, when thereby the manufacture and sale of the goods of the resident manufacturer would be discouraged and perhaps prevented altogether. Nor can it be based on the difference of residence of the manufacturers, for that, as in case of the goods, would be purely arbitrary also; and besides, would allow a state to discriminate against its own citizens in favor of the citizens of other states, which it cannot do, any

more than it can discriminate in favor of its own citizens against the citizens of other states; for the equality clause of said amendment includes everybody. No state shall "deny to any person within its jurisdiction the equal protection of the laws," is its language, and its universality of inclusion has been often adjudged. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369. If a classification can be based on none of these grounds, we see no ground on which it can be based.

As illustrative of the practical application of the rule of classification, reference may be had to *Pacific Express Co.* v. *Seibert*, 142 U. S. 339, and *Magoun* v. *The Illinois Trust & Savings Bank*, 170 U. S. 283. In the former case, a statute taxing the receipts of express companies that hired railroad and steamboat companies to transport their merchandise, but not thus taxing railroad and steamboat companies owning their own means of transportation and carrying express matter in connection with their other business, was upheld as constitutional, because of the essential difference between the companies, the express companies not being otherwise taxable, as they had no tangible property, while the railroad and the steamboat companies were otherwise taxable, as they had tangible property. In the latter case, a collateral inheritance tax that classified legacies to strangers to the blood, and increased the rate of taxation as the amount of the legacy passed from one sum to another, was upheld on the ground that the tax was not on money, but on the right to inherit, and therefore a condition of inheritance, and gradeable according to the value of the inheritance; that the condition was not arbitrary because it was determined by that value, and not unequal in operation because it did not levy the same percentage on every dollar, as it treated alike all in like circumstances and conditions, both in the privileges conferred and the liabilities imposed.

In North Carolina it is held that the requirement of uniformity in the state constitution applies to an occupation tax when imposed for revenue.

Judge *Cooley* says that when license taxes, for any reason, become discriminative between individuals of the class taxed, and select some for exceptional burdens, they are deprived of the necessary element of legal equality, and inadmissible; that it is immaterial on what ground the selection is made; whether of residence in a particular portion of the taxing district, or because the persons selected have been remiss in meeting former taxes for the same purpose, or because of any other reason, plausible or otherwise; for if the principle of selection is once admitted, limits cannot be set to it, and therefore it may be used for oppression and even punishment.

We are constrained, therefore, to hold the statute unconstitutional in the respect indicated. This makes it unnecessary to consider the other questions in the case.

> *Judgment reversed, demurrer sustained, indictment adjudged insufficient and quashed, the respondent discharged and let go without day.*