(25 App. Div. 300.)

### CITY OF ROCHESTER v. COE et al.

(Supreme Court, Appellate Division, Fourth Department.  February 6, 1898.)

TAXATION—EXEMPT MUNICIPAL PROPERTY.

Under Laws 1896, c. 908, § 3, all property within the state is taxable unless exempt by law.  Section 4 provides that property of a municipal corporation held for public use, except that portion of such property not within the corporation, is exempt from taxation.  *Held*, that real property owned by a city, outside its corporate limits, and used as a necessary adjunct to its waterworks system, was subject to taxation.

Submitted controversy by the city of Rochester against Lewis E. Coe and others, as assessors of the town of Livonia, to determine the right of defendants to assess waterworks in that town belonging to plaintiff. Judgment for defendants.

Submitted controversy under section 1279 of the Code of Civil Procedure. "The parties to a question in difference" have agreed upon a case "containing a statement of the facts upon which the controversy depends."  The case is accompanied with affidavits to the effect that the controversy is real, and that the submission is made in good faith, for the purpose of determining the rights of the parties, and that it has been filed and recorded in the county of Monroe, and the submission has been filed in the office of the clerk of this court, and therefore the "controversy becomes an action."  Code, § 1280.   By the statement it appears that the city of Rochester is a domestic corporation organized under the laws of the state of New York, which are particularly referred to in the statement, and that the city is located in the county of Monroe, and contains a population of 155,000 and upwards.   Hemlock Lake is a body of water situated in the county of Livingston, about 30 miles from the city of Rochester;  and Canadice Lake is a body of water situated in the county of Ontario, about 30 miles from the city of Rochester.   The legislature, by chapter 387 of the Laws of 1872, entitled "An act to supply the city of Rochester with pure and wholesome water," and several other statutes relating to such supply authorized the city of Rochester to acquire lands, and to construct a conduit from Hemlock Lake into the limits of the city.   The conduit was completed, and now exists.   "It begins in said lake, about one thousand four hundred feet above its outlet.   At this point, and for nearly ten miles northward, said conduit is a cylindrical iron pipe of three feet interior diameter.   For the remainder of the distance into said city it is a cylindrical iron pipe of two feet interior diameter.   And it is laid all the way under water or under ground.   Upon said line there are two open reservoirs,—one about nine miles from said city, and one within the city limits,—supplied with the water of said conduit, which reservoirs have a capacity of about one hundred million gallons.   Within the limits of said city it has caused to be laid, in the streets, iron pipes or mains varying in interior diameter from four to twenty-four inches, which mains are supplied with water through said conduit and reservoirs from Hemlock Lake.   Said conduit was constructed, completed, and in operation on or before the 1st day of February, 1876.   Said city did also construct during the period from 1893

to 1895 a second conduit from said lake to said reservoirs, for the purpose of procuring an additional supply of water. As said second conduit now exists, it begins in said lake, about one thousand six hundred feet above the outlet thereof, and is a riveted steel pipe, five feet in diameter, laid upon and in the bottom of said lake as far as the northeastern corner thereof. * * * Said second conduit was constructed, completed, and in operation on or before the 1st day of November, 1894. The city of Rochester has acquired, by acts of the legislature, by purchase, and by condemnation proceedings, the right to use the waters of said lakes." The legislature passed chapter 1018 of the Laws of 1895, which contains an act which is entitled "An act to provide for the sanitary protection of the sources of water supply of the city of Rochester by the acquisition by said city of real property and interests therein necessary for that purpose, and by the abatement and removal of sources of pollution." In pursuance of that act the city "has acquired lands, rights, and easements in land around Hemlock Lake, that might be necessary for the sanitary protection of the sources of the water supply of such city, and the abatement of sources of pollution thereof. Said city is the owner [of property and easements] and in possession of certain property situated in the town of Livonia, N. Y." particularly described in the statement. The defendants are assessors of the town of Livonia, and between May 1, 1897, and July 1, 1897, they proceeded to ascertain the names of taxable inhabitants and taxable property in said town, and completed the assessment roll of said town on or before July 26, 1897, and published the notice required by law to hear allegations of all parties interested in said assessments; and a copy of their notice is set out in the case, and also a copy "of the assessment against the above-described property owned by said city, as the same appeared upon the said assessment roll prior to and on the day of meeting to hear said allegations." A particular enumeration of the different parcels and ownership is set out in the statement. It is then stated, viz.: "The foregoing real property was acquired by said city, pursuant to the statutes above referred to, for the purposes therein and hereinafter stated, and was at the time of making the assessment herein mentioned, and now is, owned and used by said city for the following purposes: Subdivisions eleven to eighteen, inclusive, for the purpose of conveying water to said city, and for the right of way for water conduits, and the preservation and maintenance of such conduits." The statement also contains enumeration of the various uses and purposes for which the other parcels were acquired and used. The statement contains the following: "The water thus received by said city from Hemlock Lake is used by said city and its inhabitants for general domestic and municipal purposes, and the extinguishment of fires. The water is furnished to the city and its inhabitants according to certain rates fixed by the executive board of said city, which each consumer is required to pay therefor. The income from the waterworks system of said city has never been sufficient to meet the interest on the bonds issued for its construction, and the expense of operation and maintenance thereof, and there is no intention on the part of said city to operate said system for a profit." At the time and place mentioned in the notice given by the assessors to hear allegations of all persons interested in said assessments, the city applied to the said assessors "to strike said assessment from the assessment roll on the ground that it was illegal, and made oral arguments and statements before said assessors, and offered to submit to any examination that said assessors desired to make, and filed with said assessors affidavits and a statement under oath protesting against said assessment, and demanding that the assessment against said city's property be stricken from the assessment roll." The case contains a copy of the protest, demand, and affidavits so used. "On or about September 1, 1897, said assessors completed their assessment roll for said town, and made and subscribed thereto an oath, before an officer duly authorized to take the same, according to the statute of the state of New York in such case made and provided, and did thereafter deliver said assessment roll, properly sworn to, on September 1, 1897, to George J. Gross, the town clerk of said town of Livonia, and, notwithstanding the objections of said city, assessed said property as follows, which is a true copy of said assessment as the same appears on the assessment roll sworn to and delivered to said clerk as above stated." Then follow the names of the owners, under the head of "Names of Owners or Possessors,"

the words "Rochester City," and then an enumeration of the several pieces, and the number of acres of land, and the value of the real estate in dollars, amounting to $75,775. On September 1, 1897, the assessors posted a notice, required by law, of the completion and filing of the said roll as aforesaid. "All the property described in said assessment roll, and for which said city is assessed, is within the town of Livonia, and none of it within the corporate limits of said city." "The question submitted in this case is whether the property described in the assessment roll, or any part thereof, herein particularly set forth, is assessable for the purpose of taxation; the city of Rochester claiming that no part thereof is thus assessable; the defendants claiming that all of it is."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. J. Rodenbeck, for plaintiff.
William F. Cogswell, for defendants.

HARDIN, P. J.    Plaintiff is a municipal corporation, according to the definition given in section 3 of the general corporation law (2 Rev. St. [9th Ed.] p. 974).    Under the general system of tax laws adopted in 1828, and the amendments thereof prior to 1896, the property placed upon the assessment roll by the defendants was exempt from taxation. When the case of City of Rochester v. Town of Rush, 15 Hun, 239, was before the general term, Talcott, P. J., in delivering the opinion of the court, said:

"We think the property was not subject to taxation, and that the assessors of the town of Rush had no authority or jurisdiction to place the same upon the tax roll as liable to taxation."

The doctrine of that opinion was sustained and approved when the case reached the court of appeals, as appears by the report thereof in 80 N. Y. 302; and it was there held that the lands of the plaintiff (the reservoir and appendages), were for the public benefit, and held for public purposes, and "that, in the absence of an express legislative declaration authorizing it, it was not subject to taxation, and that a tax imposed thereon in said town was illegal and void."    The Town of Rush Case was referred to in People v. Forrest, 97 N. Y. 101; and, in speaking of the property sought to be taxed in that case, Danforth, J., said:

"The property involved belonged to the city,—had been purchased, under the compulsion of a legislative act, for a public purpose only, and was so retained by it.    It was therefore thought to be exempt from taxation."

Following that case was People v. Board of Assessors, 111 N. Y. 505, 19 N. E. 90, which was a case relating to a landing place at the foot of Fulton street, in Brooklyn, which had been assessed by the authorities in the city of Brooklyn.    The title to the landing place was vested in the city of New York, and had been for a period of upwards of 250 years; and, in speaking of it, Andrews, J., said:

"We think the landing place was not taxable, upon the principle that property of a municipality, acquired and held for govermental and public uses, and used for public purposes, is not a taxable subject, within the purview of the tax laws, unless specially included.    It would probably be competent for the legislature to make the landing place taxable in Brooklyn, but not having done so, in terms or by necessary implication, the power to tax the landing cannot be spelled out from general words subjecting to taxation all real and personal property within the state."

A similar doctrine was recognized in U. S. v. Railroad Co., 17 Wall. 329.

It is contended by the learned counsel for the plaintiff that the doctrine of the cases to which reference has been made still applies to the property which the defendants have assessed, and that, therefore, their assessment is illegal. On the contrary, it is argued by the learned counsel in behalf of the defendants that a contrary rule has been prescribed by the revision and enactment of the tax laws in 1896 (Laws 1896, c. 908). The legislature of 1889, by chapter 289, provided for the revision of certain general statutes of the state; and the governor, by that statute, was authorized to appoint three competent persons as commissioners to prepare and report to the legislature "bills for the consolidation and revision of the general statutes of this state upon the following subjects: * * * Subd. 3. Providing for the collection and assessment of taxes and the exemption of property from taxation throughout the state." Laws 1889, p. 357, c. 289. In chapter 660 of the Laws of 1892 the legislature provided that the governor should appoint two counsel "to examine the laws of this and other states relating to taxation, and to report to the next legislature before the first day of February, the result of their investigations, with recommendations as to legislation, relating to assessment and taxation in this state." The commissioners for revision accompanied their report of a bill which ultimately resulted in the statute of 1896, with a statement that "various changes, however, have been necessary to eliminate inconsistencies, and to reduce the subject to a harmonious and systematic whole"; and they stated that there had been about 100 acts supplemental to the Revised Statutes of 1828.

We are called upon, by the case before us, to give construction to certain provisions found in chapter 908 of the Laws of 1896 (Laws 1896, c. 908; Gen. Laws, p. 795, c. 24). Section 3 of that act provides as follows: "All real property within this state, and all personal property situated or owned within this state, is taxable unless exempt from taxation by law." The language used is broad and comprehensive, and presumptively is intended to reach all the real property and personal property found in any tax district of the state, except such as is exempted from taxation by statutory law. We think the words "unless exempt from taxation by law" were used with the intention of limiting the exemptions to such as should be enumerated by statutory law. Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663. We must therefore inquire whether there is anything in the statute under consideration which exempts the property in question from taxation. In section 4, provision is made for exempting certain properties from the operation of the preceding section:

"Sec. 4. The following property shall be exempt from taxation: (1) Property of the United States. (2) Property of this state other than its wild or forest lands in the forest preserve. (3) Property of a municipal corporation of the state held for a public use, except the portion of such property not within the corporation. * * * (5) All property exempt by law from execution, other than an exempt homestead."

That section contains other enumerations not important to be considered here.

As we have already seen, the plaintiff is a municipal corporation, and as such owns the property which the defendants have assessed, and the property is held by the plaintiff for a public use, and confessedly the property so assessed is "not within the corporation." It all lies outside of the territorial limits of the city. Property lying within the territorial limits of the city, held for a public use, by the language of the section was clearly and distinctly exempted by it from taxation. In the notes of the revisors it is said, "The legislature added the words, 'except the portion of such property not within the corporation.'" The revisors state in their notes that the subdivision, as reported by them, was intended to extend to and include all the property of a municipal corporation, in accordance with the decisions of the courts that such property is not taxable; and they refer to the case of City of Rochester v. Town of Rush, supra, and to the case of People v. Kelly, 76 N. Y. 479, where a municipal purpose is defined. The intention of the revisors seems to have been overruled by the legislature, or limited to such property as was held for a public use within the territorial limits of the municipal corporation; and the words, "except the portion of such property not within the corporation," may be regarded as equivalent to a declaration of an intention on the part of the legislature that property owned by a municipal corporation, not within its territorial limits, although held for public use, should be subject to taxation. It is a familiar rule of construction that that interpretation which gives significance to all the words of a statute or an instrument should be preferred to one which will leave the words which were used inoperative. People v. McGloin, 91 N. Y. 250; People v. Matsell, 94 N. Y. 179. Presumably, when the words of the statute as they first came from the commissioners were under consideration, the legislature well understood the rule which had been declared by the court of appeals in City of Rochester v. Town of Rush, supra, and kindred cases, and therefore inserted the words of exemption so as to limit the same to property held within the territorial limits of a municipality.

It is contended by the learned counsel for the plaintiff that:

"The assessors of the town of Livonia inferred that, because the statute expressly exempted only the property of the city within its boundaries, the balance of it was taxable. This is not a fair inference from the statute, and does not fulfill the requirements of the decision that property of a municipal corporation used for a public purpose is not taxable unless expressly so declared."

We cannot assent to the contention made by the learned counsel. On the contrary, we are of the opinion that the legislative intent was to declare all property liable to taxation, except such as was exempted by the terms of the act; and having expressly limited the exemption, in the terms of the act, to property held for public use by municipal corporations when the property was within its territorial limits, it evinced an intention to declare that property which was lying outside of the territorial limits unprotected by an exemption of the statute. Such intent of the legislature, as manifested by the language used, is equivalent to "an express declaration" that property lying outside of the limits of a municipality should be subject to assessment. Judge Cooley, at page 172 of his work on Taxation (2d Ed.), says:

"Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them."

We think the statute before us expressly indicates the intent of the legislature to include all property belonging to a municipality not held within its territorial limits. That learned author says:

"All such property is taxable, if the state shall see fit to tax it."

In the case in hand, we think the legislature has enacted that property lying outside of the territorial limits of a municipality shall be subject to be assessed. That learned author also says:

"To levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself; and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy."

That language is very appropriate in support of the idea that property within the municipality should not be taxed when it was held for a public use. However, the property now here in question does not lie within the territorial limits of the city, and it may well be suggested that to withdraw a large portion of the property of another municipality from the taxing power would lead to irregularities and inequalities which the legislature, by the language which they have used, sought to obviate.

The learned counsel for the plaintiff calls our attention to subdivision 5 in the section exempting property from taxation. That subdivision is as follows: "All property exempt by law from execution, other than an exempt homestead." We think the words "all property exempt by law from execution" were intended to protect from assessment and taxation such property as the legislature by statutory law had exempted from execution. We see nothing in section 1397 of the Code of Civil Procedure which supports the contention of the learned counsel for the plaintiff; nor has he cited us to any statute, nor do we know of any statute, which in terms provides for exemption from execution of municipal property situated like that assessed by the defendants.

No question is made, or can be made, in respect to the power of the legislature over the property in question, as there is no limitation under such power which should prevent it from declaring such property liable to taxation in the locality where it is situated. With the motives of the legislature in providing that property held by municipalities outside of their territorial limits should be taxed, we have no concern; nor with the wisdom of the policy of the law in prohibiting the withdrawal of a large amount of rural property from local taxation, when the same has been acquired by municipalities situated like the plaintiff.

The foregoing views lead to the conclusion that the defendants, as assessors of the town of Livonia, did not exceed their jurisdiction, and that their acts in making the assessment mentioned in the statement of facts were legal, and the assessment made by them should be sustained. Judgment accordingly is ordered for the defendants, with costs. All concern.