VILLAGE OF HARDWICK *v.* TOWN OF WOLCOTT.

November Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed February 4, 1925.

*Constitutional Law—Presumption of Constitutionality of Statute —Constitutional Provision Requiring Every Member to Contribute to Expense of Government Does Not Prevent Classification for Taxation Purposes—Equality Clause of Fourteenth Amendment United States Constitution Does Not Prevent Fair ` and Reasonable Classification—Status of Municipal Corporations and Property Held by Them for Public Purposes—Taxability of Such Property Unaffected by Equality Clause of Federal Constitution—Powers of State to Permit Taxation and Exempt Therefrom Property Owned for Public Purposes—Fact That Few Municipal Light Plants Come Within Taxable Classification Not Controlling as to Constitutionality of Classification—G. L. 687, Excluding Certain Municipal Light Plants from Tax Exemption, Held Constitutional—Effect on Grand List and Tax Assessment of Taxpayer, Where Town Fails to Provide Legally Constituted Board of Civil Authority to Pass Upon Appeal from Increased Assessment—Questions Not Properly Raised Not Considered by Supreme Court.*

1. Every presumption is to be made in favor of the constitutionality of a statute, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes paramount law.

2. The requirement of Ch. 1, Article IX of the Constitution that every member shall contribute his proportion towards the expense of the governmental protection afforded him, does not forbid any classification of property for the purpose of taxation, or the adoption of any scheme of taxation, if they do not offend the Federal Constitution.

3. Section I, Fourteenth Amendment to the United States Constitution does not prohibit classification of property by the state for purposes of taxation, so long as classification rests upon some ground of difference having a fair and reasonable relation to the subject of legislation, so that all persons similarly situated are treated alike.

4. Municipal corporations are auxiliaries of the state in the important business of municipal rule and remain the creatures of the state, holding and exercising powers and privileges subject to the sovereign will; and property held by them for public or governmental purposes, in a legal sense, belongs to the state, and its taxability is unaffected by the operation of the so-called equality clause of the Fourteenth Amendment to United States Constitution.

5. So far as such constitutional provision is concerned, a state may permit all or part of its own property, or that of its subdivisions owned for public or governmental purposes, to be taxed in common with other property, or it may exempt from taxation the property so owned by a municipality located within the territorial limits of such municipality, and tax such property of such municipality located outside of its territorial limits.

6. The fact that the provision of G. L. 687, that property of municipal electric light plants, when located outside of town wherein municipality owning it is situated, shall not be exempt from taxation, may affect only two or three municipalities in the State, while a circumstance to be considered on the question of inequality and unfair discrimination, is by no means controlling, the fundamental question being whether the classification rests upon a rational foundation or is arbitrary, oppressive, whimsical, or visionary.

7. G. L. 687, providing that property of municipal electric light plants, when located outside the town wherein municipality owning it is situated, shall not be exempt from taxation, notwithstanding the general exemption of property sequestered or used for public purposes contained in G. L. 684, subdivision VI, *held* a just and reasonable classification, and not in violation of the equality clause of Fourteenth Amendment to United States Constitution, whether property is devoted to public or governmental use or to a private and proprietary use.

8. Where listers in a certain year increased the valuation of a taxpayer's assessable property, which, on appeal to board of civil authority in accordance with the statute, was reduced from listers' appraisal, but the members of such board, when passing upon the matter, had not been sworn in accordance with law and, therefore, town made assessment on listers' increased valuation, the taxpayer's grand list and the tax assessed thereon were thereby illegal, entitling taxpayer to recovery of the full amount paid under protest, the town not being permitted to take advantage of its failure to provide a legally constituted board to act upon the taxpayer's appeal.

9. When, after decision of Supreme Court, a question was raised for the first time in an amended motion for rehearing filed without leave of Court, the question will not be considered.

ACTION OF CONTRACT to recover taxes, assessed by town of Wolcott against certain property situated therein, and paid under protest. Heard on agreed statement of facts at the December Term, 1920, Caledonia County, *Chase*, J., presiding. Judgment *pro forma,* and without hearing, for the plaintiff. The defendant excepted. The opinion states the case. *Reversed, and judgment for plaintiff to recover a lesser sum.* *Plaintiff's motion for reargument denied.*

*F. G. Fleetwood* and *John M. Avery* for the defendant.

G. L. 687 clearly makes the property in question taxable, and the provisions as to exemption in G. L. 684 are to be strictly construed. *In re Hickok's Estate,* 78 Vt. 259, 262.

G. L. 687 is not contrary to any provision of the Vermont Constitution, and particularly not to Ch. I, Article IX, as the tax is for a public purpose, and refusal to grant exemption to the

class of property named in the statute does not constitute undue discrimination, but is within the power of Legislature to determine. *Town of Bennington* v. *Park,* 50 Vt. 178, 192; *Colton & Moore* v. *Montpelier,* 71 Vt. 413, 415; Cooley, Taxation, 145; 1 Dexty, Taxation, 124.

The protection of Fourteenth Amendment to the Federal Constitution does not avail plaintiff, as it is not a prohibition on power of states to make classifications, but only a limitation which will be but seldom employed, and then only in case of a patent arbitrary classification. *Bell's Gap Railroad Co.* v. *Commonwealth of Pennsylvania,* 134 U. S. 232, 33 L. ed. 892; *State* v. *Clement National Bank,* 84 Vt. 167; *Merchants, etc., Bank* v. *Pennsylvania,* 167 U. S. 461, 42 L. ed. 236.

The classification adopted in case at bar is based on a reasonable ground, a difference which bears a just and proper relation to the attempted classification. *Gulf, Colorado and Santa Fe Ry.* v. *Ellis,* 165 U. S. 150, 41 L. ed. 666; *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283, 42 L. ed. 1037; *Hayes* v. *Missouri,* 120 U. S. 68, 30 L. ed. 578; Ruling Case Law, Vol. 26, p. 215; *State* v. *Clement National Bank, supra; State* v. *Travelers' Insurance Co.,* 57 L. R. A. 481, 60 L. R. A. 323; *Newport* v. *Unity,* 68 N. H. 592, 44 Atl. 704; *Caanan* v. *District,* 74 N. H. 517, 531.

*M. G. Morse* and *W. A. Dutton* for the plaintiff.

A municipal corporation in the valid exercise of a private or proprietary function has the same constitutional guaranties as a private domestic corporation or individual. *Montpelier* v. *East Montpelier,* 29 Vt. 12; *Atkins* v. *Randolph,* 31 Vt. 226; Note, 42 L. R. A. (N. S.) 286-403; 19 R. C. L. 64, and cases cited.

Proportional taxation means uniform and equal taxation, within limits of authority levying tax. *St. Albans* v. *Avery,* 95 Vt. 249, 114 Atl. 31; *In re Hickok's Estate,* 78 Vt. 259, 265; *State* v. *Hoyt,* 71 Vt. 59; Gray's Limitation of Taxing Power, 1351B, and cases cited.

To extent of inequality, a disproportional division of public expense is an uncompensated and unauthorized transfer of private property from those that bear more than their share to those that bear less. *Morrison* v. *Manchester,* 58 N. H. 538;

Cooley on Taxation (1st ed.) 153; *State* v. *Chicago & C. R. R. Co.,* 195 Mo. 228, 113 A. S. R. 661.

Property of residents and non-residents must be treated alike, and a classification on sole ground of residence is not permissible. *Simrall* v. *City of Coventry,* 90 Ky. 444; *Charleston* v. *State,* 2 L. Speer, 719; Note, 129 A. S. R. 259; 26 R. C. L. 229; *Clements* v. *Town of Casper,* 4 Wyo. 494; *Nashville* v. *Althrop,* 45 Tenn. 554.

A tax law, the effect of which is that the one required to bear the burden receives nothing from the government not received by others similarly situated who are exempt from taxation is a violation of the constitutional guaranty of proportional contribution. *In re Hickok's Estate, supra; State* v. *Shedroi,* 75 Vt. 277; *State* v. *Hoyt,* 71 Vt. 59; *St. Albans* v. *Avery, supra; Commonwealth* v. *Alden Coal Co.,* (Pa.), 96 Atl. 246; *Gulf, Colo. & St. Fe R. R. Co.* v. *Ellis,* 165 U. S. 150, 41 L. ed. 666; *Simrall* v. *City of Coventry, supra; St. Louis* v. *Com. Coal Co.,* 113 Mo. 83; *Nashville* v. *Althrop, supra; Clements* v. *Town of Casper, supra; Royster Guano Co.* v. *Virginia,* 253 U. S. 418; Note, 129 A. S. R. 257; *State* v. *Frillman* (Ohio), 118 N. E. 109; Dillon, Mun. Corp., Vol. IV, §§ 1366-1371.

SLACK, J.  The plaintiff is a municipal corporation comprising part of the territory of the town of Hardwick. It was chartered in 1890. In 1894, it was authorized to purchase or construct an electric light plant, and to that end was given authority to take land and water power in the town of Hardwick and in adjoining towns under the power of eminent domain. Acts 1894, No. 180. By No. 192, Acts 1898, it was authorized to sell electricity for light and power purposes to any person, company, or corporation desiring it, in the towns of Hardwick and Wolcott; and by No. 296, Acts 1915, such authority was extended to include the towns of Woodbury, Craftsbury, and Greensboro. In 1898, it purchased a water power in the defendant town and there constructed a hydro-electric plant, and built a transmission line therefrom to within its own territorial limits, which it has ever since used in lighting its streets and public buildings, and to furnish light, heat, and power to its inhabitants. Some time later, the date not appearing, it constructed a distribution system for the purpose of lighting the streets of the village of Wolcott and of supplying the inhabitants

thereof with lights, and at the time of the trial below it was furnishing electricity for twenty-six street lights and for fifty-five houses in that village. Still later, it constructed a transmission line to the villages of Woodbury and South Woodbury, and another to the villages of East Hardwick, Greensboro Bend, Greensboro, East Craftsbury, North Craftsbury, and Craftsbury, for the purpose of supplying lights and electricity for "small power users" in those places. To what extent the latter lines have been used did not appear.

In 1918 and in 1919, the defendant taxed that part of the plaintiff's property located in that town; the plaintiff paid taxes under protest, and is now seeking to recover them.

G. L. 684, sub-division VI, provides that, "real and personal estate granted, sequestered or used for public, pious or charitable uses" shall be exempt from taxation. But this general exemption is limited by G. L. 687, which provides that such exemption "shall not be construed * * * as exempting municipal electric light plants when located outside the town wherein the municipality owning the same is situated."

No question is made but that that part of plaintiff's property located in the defendant town was there taxable when these taxes were assessed if the latter statute is constitutional.

The plaintiff contends, however, that this statute offends the provision of Article IX, Chapter I, of the State Constitution which requires every member of society "to contribute his proportion towards the expense" of maintaining the protection of life, liberty, and property which the Constitution guarantees to all the inhabitants of the State; and also, the provision of section I of the Fourteenth Amendment to the Federal Constitution that, "no state shall * * * deny to any person within its jurisdiction the equal protection of the law," because it effects a classification of property for taxation purposes which is not permissible under either constitution.

[1]    It is a well-established rule that every presumption is to be made in favor of the constitutionality of a statute, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *In re Hackett,* 53 Vt. 254; *State* v. *Clement National Bank,* 84 Vt. 167, 78 Atl. 944, Ann. Cas. 1912D, 22. It was said by Chief Justice Shaw in *Wellington* v. *Petitioners,* 16 Pick. (Mass.) 87, 26 A. D. 631: "Courts will approach the question with great

caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.''

We first inquire concerning our own constitutional inhibition upon the classification of property for the purpose of taxation.

[2]    The only requirement of our Constitution in this matter is that every member of society shall contribute his proportion towards the expense of the governmental protection afforded him.    The general scope of this provision is pointed out in *Colton & More* v. *City of Montpelier,* 71 Vt. 413, 45 Atl. 1039; *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 724, 6 Ann. Cas. 578; *State* v. *Clement Nat. Bk., supra,* 191.    It is enough to say for the purpose of this case, at least, that the limitation imposed by our Constitution does not forbid any classification of property for the purpose of taxation, or the adoption of any scheme of taxation, provided that they do not offend the Federal Constitution, the equality clause in the former and the uniform clause in the latter being in effect the same for such purposes.

[3]    This brings us to consider whether this statute violates that provision of the latter Constitution relied upon by the plaintiff.

While this provision of the Federal Constitution imposes a limitation upon all the powers of the state which touch the individual or his property, it was not its purpose to prevent the state from adopting any proper and reasonable system of taxation.    It does not prohibit the classification of property by the state for the purpose of taxation so long as the classification rests upon some ground of difference having a fair and reasonable relation to the subject of legislation, so that all persons similarly situated are treated alike.    Its limitation upon the taxing power of the state is nowhere better stated than in *Bell's Gap Railroad* v. *Pennsylvania,* 134 U. S. 232, 33 L. ed. 892, 10 Sup. Ct. 533, where it is said:    ''The provision in the Fourteenth Amendment that no state shall deny to any person within its jurisdiction the equal protection of the laws was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways.    It may, if it choses, exempt certain classes of property from taxation at all, such as churches, libraries, and the property of charitable institutions.    It may impose different

specific taxes upon different trades and professions, and may vary the rate of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their Constitution. * * * * We think that we are safe in saying that the FourteenthAmendment was not intended to compel the State to adopt an iron rule of taxation.'' That pronouncement of the scope of this provision as affecting the taxing power of the states has since been the polestar in cases involving that question. In *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461, 464, 42 L. ed. 236, 17 Sup. Ct. 829, 830, it is said: ''This whole argument of a right under the federal Constitution to challenge a tax law on the ground of inequality in the burden resulting from the operation of the law is put at rest by the decision in *Bell's Gap Railroad* v. *Pennsylvania.''*

Later cases are: *Traveller's Ins. Co.* v. *Connecticut,* 185 U. S. 364, 46 L. ed. 949, 22 Sup. Ct. 673; *Michigan Central Railroad* v. *Powers,* 201 U. S. 245, 293, 50 L. ed. 744, 26 Sup. Ct. 459; *Ohio Tax Cases,* 232 U. S. 576, 590, 58 L. ed. 737, 34 Sup. Ct. 372; *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415, 64 L. ed. 412, 40 Sup. Ct. 560; *City of Trenton* v. *New Jersey,* 262 U. S. 182, 67 L. ed. 937, 43 Sup. Ct. 534; *City of Newark* v. *New Jersey,* 262 U. S. 192, 67 L. ed. 943, 43 Sup. Ct. 539. This Court said in *State* v. *Clement National Bank, supra,* referring to the constitutional inhibition before us: ''Diversity of taxation, both with respect to the amount imposed and the species of property selected for taxation or exemption, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of the term.''

So, the question is: Does the statute under consideration offend this constitutional provision, as construed by the courts, both state and federal? Not unless the classification thereby made must be held to be purely arbitrary—''without any distinction that bears a just relation to the purpose of its enactment.''

[4, 5] In considering this question, it should be borne in mind that this statute affects the taxability of the property of

municipal corporations only.  Such corporations, whether villages, cities, towns, or counties, are the auxiliaries of the state in the important business of municipal rule; and however great or small their sphere of action, they remain the creatures of the state, holding and exercising powers and privileges subject to the sovereign will.  For the purpose of carrying on such activities as are entrusted to them, they are given power to hold and manage real and personal property.  The state's control over them concerning their territorial limits, tenure of existence, power of taxation, etc., is pointed out in the following cases: *Atherton* v. *Village of Essex Junction*, 83 Vt. 218, 74 Atl. 1118, 27 L. R. A. (N. S.) 695, Ann. Cas. 1912A, 339; *Laramie County* v. *Albany County*, 92 U. S. 307, 311, 23 L. ed. 552; *Williamson* v. *New Jersey*, 130 U. S. 189, 199, 32 L. ed. 915, 9 Sup. Ct. 453; *Essex Public Road Board* v. *Skinkle*, 140 U. S. 334, 35 L. ed. 446, 11 Sup. Ct. 790; *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79, 35 L. ed. 943, 12 Sup. Ct.142; *Commissioners of Tippecanoe County* v. *Lucas*, 93 U. S. 108, 23 L. ed. 822; *Covington* v. *Kentucky*, 173 U. S. 231, 43 L. ed. 679, 19 Sup. Ct. 383; *Williams* v. *Eggleston*, 170 U. S. 304, 42 L. ed. 1047, 18 Sup. Ct. 617; *Hunter* v. *Pittsburgh*, 207 U. S. 161, 178, 52 L. ed. 151, 28 Sup. Ct. 40; *City of Trenton* v. *New Jersey, supra; City of Newark* v. *New Jersey, supra; Town of Keene* v. *Town of Roxbury* (N. H.), 126 Atl. 7.    In *Hunter* v. *Pittsburgh, supra,* it is said: "The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State.  Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution.  The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or part of it with another municipality, repeal the charter and destroy the corporation.  All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects, the State is supreme, and its legislative body, conforming its action to the state constitution, may do as

it will, unrestrained by any provision of the Constitution of the United States. * * * * * * The power is in the State and they who legislate for the State are alone responsible for any unjust or oppressive exercise of it." Although the court limited the application of what it there said concerning the absolute power of the state over the property of municipal corporations to such property as was held by them for public or governmental purposes, it was not called upon to, nor did it, decide the power of the state over property held by such corporations for, so-called, private or proprietary use.

Such property as a municipality holds in the former capacity, in a legal sense, belongs to the State (*Town of Barre* v. *School District*, 67 Vt. 108, 30 Atl. 807; *School District* v. *Pierce*, 67 Vt. 317, 31 Atl. 783), and therefore its taxability is unaffected by the operation of the so-called equality clause of the Federal Constitution. Judge Cooley in his work on Taxation, vol. 1, p. 82 (3rd ed.) says that this clause "secures no rights to municipal corporations of a state, as against the state, to the equal protection of the laws, which can limit legislation to charge them with public obligations; and their inhabitants, as members of such corporations have no greater immunity with reference thereto." In support of this proposition he cites *State* v. *Williams*, 68 Conn. 131, 35 Atl. 24, 421, 48 L. R. A. 465, affirmed in *Williams* v. *Eggleston, supra*. The learned author continues: "Nor is the amendment violated by a state statute apportioning for taxation among several townships funds of a charity the situs of which is in one town." See *Northampton* v. *Hampshire County Commissioners*, 145 Mass. 108, 13 N. E. 388. In *Town of Canaan* v. *Enfield Village Fire District*, 74 N. H. 517, 70 Atl. 250, where the constitutionality of a statute exempting from taxation property of the defendant located within the territorial limits of the plaintiff was involved, it was said, at 70 Atl. p. 254 (74 N. H. 531) : "Since the defendant is an agency of the government, receiving all its powers from the Legislature and holding its water works located in Canaan for the benefit and convenience of the public, the constitutional doctrine of equal and proportional taxation, as applied to the facts in this case, has no application." It is apparent, too, that the framers of the Federal Constitution could not have intended this clause to apply to taxes assessed on state property, or property owned by municipalities, at least, such as was devoted to

public or governmental use, since such property then was, and ever since has been, regarded as exempt from taxation, unless otherwise provided by the organic law of the state, or by legislative enactment. *Stiles* v. *Newport,* 76 Vt. 154, 56 Atl. 662; Dillon, Mun. Corp., vol. IV, 1396; 37 Cyc. 874; 26 R. C. L. 332. Therefore, whatever the state does concerning the taxation of its own property or that owned by its political subdivisions in their public or governmental capacity is not open to the objection that it offends this constitutional provision. It may permit all or part of its own property, or that of its subdivisions owned as above indicated, to be taxed in common with other property. Dillon, Mun. Corp., *supra;* Cooley on Taxation, 263; *Inhabitants of Whiting* v. *Inhabitants of Lubec,* 121 Me. 121, 115 Atl. 896; *Town of Keene* v. *Town of Roxbury, supra.* It may exempt from taxation the property so owned by a municipality located within the territorial limits of such municipality, and tax such property of such municipality located outside of its territorial limits. *Inhabitants of Whiting* v. *Inhabitants of Lubec, supra; In re City of New York,* 183 N. Y. 245, 76 N. E. 18; *City of Amsterdam* v. *Hess,* 157 N. Y. 42, 51 N. E. 410; *City of Rochester* v. *Coe,* 25 App. Div. 300, 49 N. Y. S. 502, affirmed 157 N. Y. 678, 51 N. E. 1093; *People* v. *Board of Assessors,* 111 N. Y. 505, 19 N. E. 90, 2 L. R. A. 148; *Board of Water Commissioners of City of Hartford* v. *Town of Bloomfield,* 84 Conn. 522, 80 Atl. 794; Dillon, Mun. Corp., *supra.* Although the constitutionality of the statutes under which the taxes in these several cases were assessed was not raised, that fact, of itself, indicates that such question was considered to be without merit. And in *In re City of New York,* where property of the city used in connection with its water works but located outside the city limits was held taxable in the municipality where located, the court said: ''There is neither injustice in this construction, nor any question of the legislative power. * * * To require that the properties of municipalities, not within the corporation, should be taxed, as by the enactment of the general tax law of 1896, which changed the exemption at common law, was as clearly within its power as it was clearly wise and just.'' And language of like import is to be found in *People* .v. *Board of Assessors and City of Rochester* v. *Coe.*

[6, 7]    The only difference between the statute involved in the cases last cited and the one under consideration is that those
23

statutes limit the exemption to property located within the territorial limits of the municipality owning it, while the statute before us extends the exemption to property located within the town of which the municipality owning it is a part. It makes the town instead of the village the exemption area, but it is not apparent how this difference affects the constitutionality of this statute, and for obvious reasons no other exemption area could be fixed, in this State, in view of the interrelation between villages and the town of which they are part, in the matter of taxation. Villages have no separate grand lists of their own upon which to assess taxes, nor have they any authority to make such lists. Their taxes are assessed on that part of the town grand list comprising the taxable polls and property within the village limits. Such lists are made by the town, under legislative authority, and therein are allowed all exemptions, both those declared by statute and those voted by the town, whether affecting persons or property within or without the village limits. On such lists, too, the taxable polls and property of the village are taxed in common with the other taxable polls and property of the town to defray town, county, and State expenses. Moreover, a town in which a village having an electric light plant is located may reasonably be expected to derive therefrom benefits, financial and otherwise, not enjoyed by other towns, whatever the relative location of such towns to such village may be, because such village is thereby made a more desirable place to live and do business in, for, as said in the *Village of Swanton* v. *Town of Highgate*, 81 Vt. 252, 69 Atl. 667, 16 L. R. A. (N. S.) 867, "darkness invites disorder and encourages crime," and consequently the value of its taxable property which constitutes part of the taxable property of the town is increased to the direct benefit of the town as well as the village, a benefit not shared in by towns of which the village is not a part. Thus it may be seen that the classification does not rest alone upon the location of the plant, as argued by the plaintiff, but upon the benefit to be derived therefrom by the village and the town of which the village is part.

Apparently the Legislature saw the injustice of taxing the inhabitants of one municipality in order that the inhabitants of another municipality might enjoy the benefit of electric lights and power. Without the protection afforded by this statute the grand list of one municipality might be very materially re-

duced by the acts of another municipality, without any beneficial return to the former or its inhabitants.

We think the justice of the statute is obvious from every viewpoint. It treats all municipal electric light plants alike; it exempts the property of all that is located within the town of which the municipality is part, so far as devoted to public use; it taxes the property of all that is located outside said town. The only inequality arising under its operation is due solely to the fact that one municipality is obliged to go outside its territory for power to run its plant, while another is not, and clearly that furnishes no excuse to the Legislature for visiting the misfortune of the former upon some other municipality.

While the fact, if it be a fact, that only one or two other municipalities in the State are affected by this statute is a circumstance to be considered on the question of inequality and unfair discrimination, it is by no means controlling. As is said in *Mass. Gen. Hospital* v. *Inhabitants of Belmont,* 233 Mass. 190, 203, 124 N. E. 21, 26, ''The fundamental question, however, is whether the classification rests upon a rational foundation or is arbitrary, oppressive, whimsical or visionary.'' See same case, 238 Mass. 396, 131 N. E. 72.

It is unnecessary in disposing of this case to determine what part, if any, of plaintiff's property located in Wolcott is devoted to public or governmental uses, for, if the statute in question is valid, all property so located is taxable. By the statute, the Legislature undertook to subject to taxation such property of municipal electric light plants as is located outside the town wherein such municipality is located, whether such property is devoted to a public or governmental use or to a private or proprietary use, and enough has been said to show that such classification as the statute makes for that purpose does not offend the equality clause of the Federal Constitution.

The amount which plaintiff seeks to recover includes taxes assessed on two dwelling houses built by it near its Wolcott plant for the use of its employees there engaged, and thirty acres of land which is part of its original purchase, but only part of which is used in connection with its plant. Various claims concerning the taxability of these properties are made, but since our holding on the main question renders these claims immaterial, they are not considered.

No other question than that already disposed of affects the validity of the 1918 tax.

[8]    The grand list for 1919, so far as made up from real estate, was based on the quadrennial appraisal of 1918. In making that appraisal, the listers increased the valuation of plaintiff's property from $35,000 to $42,320. From their action the plaintiff appealed to the board of civil authority, and that board, on September 19, 1918, reduced such appraisal to $35,695. Six days later, defendant discovered that at the time such board considered and passed upon plaintiff's appeal the members thereof had not been sworn as required by G. L. 835, and immediately notified the plaintiff thereof by mail "so that you can proceed as you think best and have the matter legal." Neither party took further action in the matter. In making up plaintiff's grand list for 1919, the listers' valuation of its real estate in the 1918 quadrennial was used. The defendant contends that this was proper, since the action of the board of civil authority was void because of the irregularity already noticed. But the defendant could not take advantage in this way, of its failure to provide a legally constituted board to act upon plaintiff's appeal. Plaintiff's grand list for 1919 was illegal, and it follows that the tax assessed thereon was, likewise, illegal. This tax, which amounted to $1,218.83, was paid October 27, 1919. No question is made but that the plaintiff is entitled to recover the full amount of such tax, if entitled to recover any part of it.

*Judgment reversed, and judgment for plaintiff to recover $1,218.83, with interest from October 27, 1919.*

TAYLOR, J. (dissenting). I am unable to concur in the result reached by the majority, and specially dissent from so much of the opinion as seems to approve of the doctrine that legislation affecting municipal corporations is not subject to constitutional limitations. I am prepared to admit that the test of proper classification for purposes of taxation is the same under the equality clause of the Fourteenth Amendment and the taxation clause of our State Constitution, but I do not subscribe to the proposition that the limitation imposed by the latter permits the adoption of any scheme of taxation which does not offend the former as it may be construed by the Federal Supreme Court. In other words, a holding by that Court that a municipal cor-

poration has no standing to invoke the protection of the Fourteenth Amendment against unequal taxation would not control the question arising under the State Constitution. It may be that Court has gone so far in the Trenton and the Newark cases, cited in the majority opinion, as to hold that the Fourteenth Amendment affords a municipal corporation no protection against legislation affecting its property held in a private or proprietary capacity. If so, the Court has departed from its former holdings and ignored the distinction, recognized by it for more than a century, between the rights of a municipal corporation respecting property held in a purely governmental capacity and that held in a private or proprietary capacity. In the circumstances, it is of special importance that the distinction between the protection afforded by the two provisions should be preserved. Municipal corporations like the plaintiff are either entitled to the same protection respecting their property held in a private capacity as the Constitution guarantees to individuals, or they have no protection from legislative encroachments. If they may be subjected to taxation that does not meet the requirements of the Constitution they must equally be denied the benefit of all constitutional limitations. There is no exception in favor of tax legislation.

It is the well-established rule in most of the jurisdictions where the question has arisen that the property rights of municipal corporations (referring to property acquired in their private or proprietary capacity) are protected by the same constitutional guaranties which shield the property of individuals from legislative aggression. Many of the leading cases are collected in 19 R. C. L. 760. See, also, *City of Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 130 N. E. 390, 394; *Springfield Gas & Elec. Co.* v. *Springfield,* 292 Ill. 236, 126 N. E. 739, 18 A. L. R. 929. It is the settled doctrine of our own cases. Those most in point are *Town of Poultney* v. *Town of Wells,* 1 Aikens 180, 186; *Montpelier* v. *East Montpelier,* 27 Vt. 704; same case, 29 Vt. 12, 67 A. D. 748; *Atkins* v. *Town of Randolph,* 31 Vt. 226, 237; *Plimpton* v. *Somerset,* 33 Vt. 283; *Sargent* v. *Clark,* 83 Vt. 523, 77 Atl. 337. The doctrine is recognized in *Stiles* v. *Newport,* 76 Vt. 154, 56 Atl. 662. It is not claimed that the plaintiff's electric plant is held in a governmental capacity, and it clearly is property held in its private or proprietary capacity. On the authority of these cases the plaintiff

would be entitled to the same protection against unconstitutional tax legislation as a private corporation or an individual. The effect of the opinion of the majority is to overrule these cases, though they are not referred to, and to commit the court to a doctrine which Judge Cooley has characterized as "dangerous in government and unsound in constitutional law." Cooley on Taxation, 481. The majority have gone out of their way to accomplish this result, for in the end they uphold the constitutionality of the statute.

As I view it the only open question in the case is one of classification. I recognize the rule that statutes are not to be declared unconstitutional unless their invalidity appears beyond any reasonable doubt; but the classification on which this statute is based appears so clearly arbitrary that I am unable to entertain any doubt of its invalidity. There is no disagreement respecting the test of proper classification. It is well stated by Rowell, J., in *State* v. *Hoyt,* 71 Vt. 59, 42 Atl. 973. The difficulty inheres in its application. It will be admitted that the rule requiring proportionate taxation may be as effectually abrogated by arbitrary exemptions from taxation as by arbitrary imposition of unequal taxation. Besides it is constantly to be borne in mind that the right of classification is allowed in order to avoid or correct inequalities, never to create them. The effect of the questioned statute is to make two classes of municipal electric light plants for taxation purposes distinguished merely by location, whether within or without the town where the municipality owning the plant is situated.

The mere fact of classification is not enough. To withstand the constitutional test the classification must be reasonable, not a mere arbitrary selection, and must rest upon some real and substantial difference existing between the classes, having a fair relation to the object sought to be accomplished by the legislation, so that all persons similarly situated shall be treated alike— in short, some just and substantial reason for the difference in treatment between the two classes. The *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 64 L. ed. 989, 40 Sup. Ct. 560. Stated differently, but to the same effect, the test of a valid classification is a substantial distinction which differentiates in important particulars the persons to whom it applies from all other persons, having some just and reasonable relation to the purpose of the law. *Springfield Gas & Elec. Co.* v. *Springfield, supra.* See,

also, *State* v. *Hazelton,* 78 Vt. 467, 63 Atl. 305; *State* v. *Hoyt, supra; State* v. *Shedroi,* 75 Vt. 277, 54 Atl. 1081, 63 L. R. A. 179, 98 A. S. R. 825. The principle is everywhere recognized that there can be no valid discrimination between subjects which properly belong to the same class. Proper classification, then, can be based only upon real differences existing between the classes. Any attempted classification must fail which results in a distinction between members of the same class.

It was held in *State* v. *Hoyt* that classification based on a difference of residence was purely arbitrary. It seems clear that the basis of the classification in the case at bar is of the same quality. The test must be the same whether the owner of property is a municipal corporation or an individual. The effect of the classification is to exempt resident and tax non-resident owners of the same kind of property. The opinion discusses at some length the justice and reasonableness of the tax as between the plaintiff and defendant, but that is· wholly beside the point. The test is not whether, as between the municipalities owning the property and the taxing districts where the property happens to be located, the exemption is just or unjust or the imposition of the tax reasonable or unreasonable. It is wholly a question of discrimination between municipalities owning the same kind of property. The question can be met only by showing that a substantial difference exists between the municipalities taxed and those exempted, making the distinction just and reasonable as between them. I have yet to discover any satisfactory explanation why two municipal electric plants in all respects alike, except that one is located within and the other without the boundaries of the town where the owner is situated, should not be treated alike where the true test of proper classification is applied. It is no answer to say that the town within which the particular village is located is specially benefited, for the test is·not a difference in benefits of the taxing districts; and, besides, there is·no such difference. The only difference in condition between the municipalities taxed and those exempted is the location of their property. All are engaged in precisely the same kind of enterprise and the property employed has no distinguishing characteristics except the accident of location with reference to town lines. All are engaged in a public service and are subject to supervision by the Public Service Commission. They would owe the public out-

side their corporate limits the same duty in all respects regardless of town lines. To my mind this is not the ''real and substantial difference'' upon which a valid classification rests, but is an arbitrary and fanciful distinction. This should be seen when we consider how the mere change of town lines might affect the taxability of municipal property, or the situation that would exist if two municipalities, the one resident and the other non-resident, owned electric plants located in the same town.

In the cases relied upon by the majority, as stated in their opinion, the constitutionality of the statutes there in question was not involved. Consequently they are not entitled to the force given them. No case is cited, and I venture to say that none can be found, that supports the validity of the attempted classification. A similar question arose in *Essex County Park Com.* v. *Town of West Orange,* 77 N. J. Law, 575, 73 Atl. 511, and it was held that classification according to location of the property could not be sustained. It was pointed out that such a classification was not according to any feature inherent in the property itself, but with reference to the mere chance of location, a circumstance entirely disconnected with the characteristics of the property.

The statement that ''for obvious reasons no other exemption area could be fixed, in this State, in view of the interrelation between villages and the town of which they are a part, in the matter of taxation'' adds nothing to the argument. As municipal corporations they are entirely distinct. The fact that village grand lists are made up as they are certainly would not stand in the way of limiting the exemption to that part of the property owned by a village located within its territorial limits and taxing so much of it as is located within the town outside. If it were admitted that a sufficient basis could be discovered for such a classification, though no case is found where the question has been discussed and decided, the inclusion of the whole town in the exemption area presents an entirely different question. The fact that the town grand list is made the basis for ascertaining the village grand list in no way affects the relations of the two municipalities, and affords no satisfactory reason for the classification of property to be taxed or exempted from taxation. The Legislature would doubtless have authority to provide for the uniform taxation of municipal electric plants. Such a measure would answer every valid argument advanced in support of

the questioned act.  But, when it undertook a classification based. solely upon the location of the property, its action was clearly discriminatory as between municipalities taxed and those exempted from taxation,˜ and for that reason in contravention of the Constitution.  I would affirm the judgment.

POWERS, J.  I regret that the majority has seen fit to discuss the question of the property rights of municipal corporations, since it is wholly unnecessary to do so.  I concur in what Mr. Justice Taylor says on that subject.  But I cannot say that I am convinced *beyond a reasonable doubt* that the classification adopted in the statute here involved is without sufficient basis, and I therefore concur in the result.

## ON MOTION FOR REARGUMENT.*

After the foregoing opinion was handed down, the plaintiff, on leave granted, filed a motion for reargument pending which final disposition of the case has been withheld.

The grounds of the motion are, in effect, these:    (1) That the Court has overlooked the distinction between plaintiff's rights and duties when acting as a governmental agency and when acting in a private or proprietary capacity; (2) that the Court has applied to the plaintiff when it was acting in the latter capacity rules of law applicable only if it was acting in the former capacity; (3) that the Court has ignored its former decisions respecting the rights of municipal corporations when acting in a private or proprietary capacity under authority conferred by charter; (4) that in considering the question of classification, the Court has failed to give due weight to the fact that the plaintiff is furnishing the inhabitants of defendant town with electricity for private and public uses; and (5) that the Court has overlooked the distinction between a condition that might have been imposed "as part and parcel of the grant" and a condition subsequently imposed after plaintiff had accepted its charter and incurred great expense thereunder.

Subsequently, and without leave, the plaintiff amended its motion by adding the following ground:    That in making use of the "equality" clause of the Fourteenth Amendment to the Federal Constitution as a measure by which to determine the

*Opinion on motion for reargument filed April 27, 1925.

scope of the proportional provision of the State Constitution, the Court misapprehended the true relation between the two fundamental laws.

This case has been twice argued in this Court, and on each occasion elaborate briefs were submitted by both parties. That counsel availed themselves of the opportunity thus afforded to fully present their views touching all phases of the case then deemed essential is evidenced by their briefs; and the Court has endeavored to examine each question presented with the degree of care commensurate with the conceded importance of the case. Nor are we satisfied from anything that has been called to our attention that we have failed to do so.

Respecting the first three grounds of the motion it is enough to say that the claimed distinction between the rights of a municipal corporation when acting as a governmental agency and when acting in a proprietary capacity was fully pointed out by the plaintiff on the last hearing, and was carefully considered and weighed by the majority in arriving at the conclusion reached by them.

The same is true concerning the subject-matter of the fourth ground of the motion.

The fifth ground of the motion relates to a matter which appeared in the opinion when read but which has since been omitted; therefore, there is no occasion to consider it.

[9]   The remaining question urged upon our attention is that presented by the amended motion, which was filed without leave. A question presented in this manner stands no better than though first raised in the brief, which we have held to be unavailing. *Powell* v. *Merrill,* 92 Vt. 124, 131, 103 Atl. 259. But if we treat this question as properly before us, it would not change the result. What is said in the opinion concerning the scope of the equality clause of the Federal Constitution and the proportional provision of the State Constitution was said advisedly, and we find nothing in the motion or in the exhaustive brief filed in support thereof to warrant a reargument on that point.

*Motion denied.   Let full entry order go down at once.*