HERMAN & GRACE, a corporation,

*v.*

BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX et al.

[Decided September 21st, 1906.]

1. The act of March 30th, 1892 (*P. L. 1892 p. 369; 2 Gen. Stat. p. 2078*), provides that any person who, pursuant to the terms of a contract for any public improvement in any city, town, township or other "municipality" within the state, authorized by law to contract for such improvement, shall perform labor or furnish materials for the completion of such contract, shall have a lien on the moneys due under the contract.—*Held,* that where a county let a contract for the construction of a county court-house, the county was a "municipality" within such act.

2. The act of March 22d, 1900 (*P. L. 1900 p. 190*), creates a county building commission to control, on behalf of the county, the purchase of land, the erection of buildings and payment for the same, together with the bonding of the county for the purpose of raising the entire funds for payment.—*Held,* that such commission, in the letting of a contract for the building of a court-house for the county, acted as agent for the county, and that its contract was the contract of the county.

3. The act of March 30th, 1892 (*P. L. 1892 p. 369; 2 Gen. Stat. p. 2078 § 1*), expressly provides that the lien given on moneys due on a contract for a municipal improvement shall exist in favor of subcontractors and their assigns or legal representatives. Subsequent sections, relating to the time of attachment of the lien or the procedure for recovery, referred to the liability of the "contractor" for the claim preferred, and section 14 (*P. L. 1892 p. 373; 2 Gen. Stat. p. 2079*) defines "contractor" as meaning the person with whom the contract of the municipality is made.—*Held,* that such subsequent sections did not so modify section 1 as to deprive a subcontractor of his right to a lien thereunder.

4. A defendant in equity cannot demur merely because other parties are improperly joined, such objection being available only to the defendants improperly made parties.

5. Where, in a suit to enforce a subcontractor's liens on the proceeds of a contract for a municipal improvement, a bank claimed a portion of the fund under an assignment as collateral for the payment of a debt in excess of that due complainant, the bank was a necessary party to the suit, whether complainant's claim was prior or subsequent to that of the bank.

On demurrer to bill.

*Messrs. Guild & Marlin, Mr. Willard P. Voorhees* and *Mr. Chauncey G. Parker,* for the demurrants.

*Mr. John R. Hardin,* for the complainant.

EMERY, V. C.

The Essex county building commission, appointed under the provisions of an act entitled "An act to facilitate the acquirement of lands and the erection of buildings for county purposes," approved March 22d, 1900 (*P. L. 1900 p. 190*), erected a county court-house by written contract with the V. J. Hedden & Sons' Company, dated October 16th, 1902, and supplementary contracts, dated May 8th, 1902, and November 30th, 1903, copies of which contracts are annexed to the bill. The Hedden company contracts cover the entire construction, and this company, on December 20th, 1902, by written contract of that date, subcontracted with the firm of John F. Sayward & Company for the heating and plumbing work. On March 10th, 1903, Sayward & Company subcontracted with complainant for a portion of their work, and complainant under this contract, up to September 14th, 1905, furnished work and materials for the construction of the court-house, for which a balance of $6,928 was then and is still due. On November 22d, 1905, Sayward & Company suspended work under their contract with the Hedden company, by reason of insolvency, and have since been declared bankrupts.

The Hedden company has not yet completed its contract and (as the bill alleges) large sums of money are still due to it under the contract. The bill is filed to enforce a lien on the money due or to grow due under this contract and claimed under the act of March 30th, 1892 (*P. L. 1892 p. 369; 2 Gen. Stat. 2078*), relating to liens on funds in the control of municipalities. The board of chosen freeholders of the county of Essex, the Essex county building commission, and the three members thereof as individuals, are made defendants to the suit, as well as the Hedden company, Sayward & Company and several defendants claiming title under Sayward & Company by assignment and otherwise, and also other lien claimants who have filed claims. The de-

murrers to the bill filed by the Hedden company and the Metropolitan bank, assignees of Sayward & Company, raise specifically the following points:

*First.* That the Essex county building commission, with whom the contracts set out in the bill were made, is not a "municipality" within the meaning of the act of March 30th, 1892.

*Second.* That the contracts were not contracts for a public improvement under that act.

*Third.* Improper joinder as parties defendant of the board of chosen freeholders, the building commission and the individual members thereof. Under a general allegation of want of equity taken on all demurrers, it was objected at the hearing that the lien given by the act of 1892 was given only to the original contractor, and did not extend to a subcontractor. This point was fully argued at the hearing and by the briefs, and will be disposed of.

The first and second objections cover the same point, and the material one, viz., whether, as to either the original or subcontractor, the contract in this case was a contract made with a "municipality," within the meaning of the act of 1892. It is contended by the demurrants that neither the building commission, with whom the formal contract was made, nor the board of chosen freeholders, nor the county is such "municipality." The solution of this question depends upon the construction of this act of 1892 in connection with the act of March 22d, 1900, and the supplement thereto of February 26th, 1903. *P. L. 1903. p. 19.* The act of 1892 is entitled

"An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performance of any work in public improvements in cities, towns, townships and other municipalities in this state,"

and by section 1 it is provided:

"That any person or persons who shall hereafter, as laborer, mechanic, merchant or trader, in pursuance of or in conformity with the terms of any contract for any public improvement made between any person or persons and any city, town, township or other municipality in this state

authorized by law to make contracts for the making of any public improvement, perform any labor or furnish any material toward the performance or completion of any such contract made with said city, town, township or other municipality, on complying with the second section of this act, shall have a lien for the value of such labor or materials, or either, upon the moneys in the control of the said city, town, township or other municipality, due or to grow due under said contract with said city, town, township or other municipality, to the full value of such claim or demand, and these liens may be filed and become an absolute lien to the full and par value of all such work and materials, to the extent of the amount due or to grow due under said contract, in favor of every person or persons who shall be employed or furnish materials to the person or persons with whom the said contract with said city, town, township or other municipality is made, or the subcontractor of said person or persons, their assigns or legal representatives; *provided*, that no city, town, township or other municipality shall be required to pay a greater amount than the contract price or value of the work and materials furnished when no specific contract is made in the performance of said work by the contractor."

Under the title of this act a public improvement in a county, such as a county court-house, would clearly come within the words "in other municipalities in this state," and under the first section a contract for the erection of a county court-house, if made with any county in this state, would be included within the description "other municipality." The erection of county buildings, such as court-houses, jails and other public buildings, are authorized, if not absolutely required by law, in every county, and a construction of this act, relating mainly to public buildings and the payment for them, which would exclude counties, while necessarily including every other territorial division and including them for the reason that a county is not or may not be, for some other purposes, technically or strictly called a "municipality," seems to me unreasonable, and should not be adopted, especially as such exclusion might invalidate the act by making it special and unconstitutional.

The real question on this branch of the case, as it seems to me, is whether the contract for this improvement, although in form a contract with the commission, was in legal effect a contract with the county. If so, it was a contract with a municipality under the act of 1892. The answer to this question depends upon the construction of the act of 1900, and the relations of the commission and the county under that act. This act is entitled

"An act to facilitate the acquirement of lands and the erection of buildings for county purposes." Previous to its passage the board of chosen freeholders in any county had the power to acquire such land and erect such buildings through the ordinary machinery of the organization of these bodies (which were in some counties very large), and to provide for the expense by taxation or issuing bonds to limited amounts. *"Chosen Freeholders," Gen. Stat. p. 410 ¶ 4; p. 430 ¶ 126 &c.* The act of 1900 accomplishes two general objects—*first,* the selection of a small body as a building commission who are to control, on behalf of the county, the purchase of the lands and the erection of the buildings and the payments for the same, and *second,* the bonding of the county for the purpose of raising the entire funds for payment.

The building commission, consisting of three persons (the director of the board and two other residents of the county selected by the director), are (section 2) authorized to purchase necessary land and to erect the county buildings, taking title and proceedings for condemnation where necessary in the name of the board of chosen freeholders.

By section 3, all money required for the payment of the costs of lands and buildings and other necessary expenses

"shall be paid, on the order of the said commission, by the county collector, out of any funds which shall be raised in the manner hereinafter authorized."

This method of providing the county collector with funds to be disbursed on the order of the commission (being their only method of discharging the contract made by them for the cost) is fixed by section 4, which provides that

"it shall be lawful for the board of chosen freeholders of such county to issue and sell the bonds of such *county corporation* for the purpose of raising money to pay the cost of lands and buildings and furnishing the same to the provisions of the act,"

and to an aggregate amount not exceeding a specified per cent. (five-tenths of one per cent.) of the ratables of the county. By a supplement of February 26th, 1903 (*P. L. 1903 p. 19*), an

35

issue "of the bonds of such *county corporation*" to a further aggregate amount of three-tenths of one per cent. was authorized.

The act of 1900 merely authorizes the building ·commission to erect the buildings, making no express provision as to the form of the contract,· whether it shall be in writing or otherwise, or in whose name, whether in that of the board of chosen freeholders or of the commission. But, in my judgment, such omission is immaterial, because the whole scope of the act is to make the commission and its members the agents of the county, designated under legislative authority, for erecting buildings on lands of the county, which are to be paid for only out of moneys raised by sale of bonds of the county. These bonds are the bonds "of the county corporation," *i. e.,* of "the board of chosen freeholders of the county," the formal title of a "county corporation" known to our laws since the act of 1798. *Pat. L. 265.*

This designation in the act of 1900 of the board of chosen freeholders as the "county corporation" follows the form of expression of many of the acts providing for the organization of the board of freeholders in designating the board as the "corporation of the county," and it has been held that the county in its corporate capacity and as a municipality is designated by this name. *State* v. *Crowley, 39 N. J. Law (10 Vr.) 264, 270 (Supreme Court, 1877).* In this case, money in the control of the board of chosen freeholders, as trustees for the county, was held to be "money of the county" under a criminal statute.

The commission are not responsible, either as a body or individually, for the payment of the money, and the county is so responsible for the discharge and payment of their contracts, under the acts, in whatever form they may have been made. If the contracts are made in the name of the commission and not of the board of freeholders, the payment could probably be enforced only by *mandamus,* but such limitation or restriction of the procedure for effecting the discharge of the obligation for payment by the commission to the contractor does not prevent the contract for the erection of the buildings from being substantially a contract with the county, which under the law is ultimately bound to· discharge the obligation for the payment.

The "obligation of a contract" in a constitutional sense is said to be "the means provided by law by which it can be enforced, by which the parties can be obliged to perform it" (Mr. Justice Field in *Louisiana* v. *New Orleans (1880), 102 U. S. 203, 206*), and to consist in the authority or power which the law gives to enforce its performance, or to give a remedy for its non-performance. *Mill. Const. U. S. 540.*

For the purposes of the act of 1892, the general object of which is to control, in the hands of municipalities as the owners of public buildings, the payment of moneys due from the owners for their erection, this contract between the original contractor and the building commission for the erection of a court-house on lands of the county, to be paid for only by its money, must be held to be a contract with the county, and the county must be considered a "municipality" within the act.

*Second.* As to the right of the subcontractor to a lien, the first section of the act of 1892 expressly provides that the lien shall exist

"in favor of every person who shall be employed or furnish material to the person or persons with whom the contract with said city * * * is made or the *subcontractor* of such person or persons, their assigns or legal representatives."

Subsequent sections of the act relating to the time of attachment of the lien (section 5), or to the procedure for recovery (section 8), refer to the liability of the *contractor* for the claim preferred, and section 14 defines "contractor" as meaning the person with whom the contract with the municipality is made. These expressions have been relied on as restricting or overruling the provision of the first section expressly giving liens to those who supplied the subcontractor, but Vice-Chancellor Grey, in a well-considered opinion, where the point was expressly involved and decided—*Garrison* v. *Borio, 61 N. J. Eq. (16 Dick.) 236, 242, &c. (1900)*—*held* that the language of these subsequent sections did not qualify or nullify the express provisions of the first section, but was entirely consistent therewith. Thus construed, the act provided that the right of the claimant to recover on a claim against a subcontractor, for which a lien was given

by the statute, was, as to the amount preferred by lien, limited
to and controlled by the liability of the contractor to the sub-
contractor, for the materials or labor furnished to the subcon-
tractor (and for which a lien was claimed) at the time of filing
the notice of lien required by the statute. This construction
harmonizes all clauses of the statute, and, as the vice-chancellor
points out, follows the construction given in New York to the
same statute.

The only reason for referring at length to this decision is the
contention that doubt has been thrown upon this conclusion by
an expression in a later opinion of the court of errors and appeals
in *Hall Company* v. *Jersey City, 64 N. J. Eq. (19 Dick.) 766,
768 (1902)*. In this opinion a question was suggested as to the
meaning of the word "subcontractor" in the first section, and
it was said that it seemed plain from the provisions of the act
as a whole that the lien was given only for work or materials
furnished to the original contractor. But in that case the
materials were in fact furnished by the lien claimant to the
contractor, so that the point now raised was not involved or de-
cided, and the court of errors and appeals itself refers to the
expression on the subject in the court below as a *dictum* to which
they did not give approval by their opinion.. Neither does the
point now raised seem to have been argued in the court of errors
and appeals. And as Vice-Chancellor Grey's full discussion and
the New York decisions on the very point do not seem to have
been called at all to the attention of the court, it may be taken for
granted, I think, that the *dictum* in *Hall Company* v. *Jersey
City* should not be considered as intended to overrule these deci-
sions. Vice-Chancellor Grey in a later decision—*Wilson* v. *Diet-
rich, 59 Atl. Rep. 251 (1904)*—follows his earlier decision as
still controlling. I consider it not only as controlling me as
authority but also as founded on sound reason, and shall add to
·it only the suggestion that the proceeding in equity under the
act of 1892 does not permit any personal judgment against the
contractor (*Delafield Construction Co.* v. *Sayre, 60 N. J. Law
(31 Vr.) 451 (Court of Errors and Appeals)* ; *Norton* v. *Sink-
horn, 61 N. J. Eq. (16 Dick.) 508 (Vice-Chancellor Grey, 1901)*,
and that this circumstance tends to support the conclusion that a

personal liability or obligation of the contractor to the claimant for the amount preferred by statute is not a test of the right to any lien on the fund.

*Third.* The objection of misjoinder of other persons as parties defendant is not well founded. In equity a defendant cannot demur merely because other parties are improperly joined, and such objection can be made by only the defendants improperly made parties. *Miller* v. *Jamison, 24 N. J. Eq. (9 C. E. Gr.) 41, 44 (Chancellor Zabriskie, 1873)*; *Olds* v. *Regan, 32 Atl. Rep. 827 (Vice-Chancellor Emery, 1895)*; *2 Dan. Ch. Pr. (6th ed.) *337 note 3.* As to defendants improperly joined, the bill will be dismissed, either on their demurrer or at the hearing, and the misjoinder has no other effect. *Seymour* v. *Freer, 8 Wall. 202, 218 (1868)*.

The demurrer of the Metropolitan Bank also specifies, as an additional cause, that the assignments to it by Sayward & Company appear by the bill to have been made before the notice of complainant's claim or lien was filed, but as these assignments were also alleged to have been made as collateral security for the payment of $5,500, and more than this sum is alleged to be due under the contract for the materials furnished by the complainant, the bank is a necessary party to this suit for an accounting and lien, whether the complainant's claim is prior or subsequent to that of the bank.

An order overruling the demurrers will be advised.