ESSEX COUNTY PARK COMMISSION, PROSECUTOR, v. TOWN OF WEST ORANGE AND BOARD OF EQUALIZATION OF TAXES OF NEW JERSEY.

Argued June 4, 1907—Decided November 11, 1907.

1. Lands acquired by a park commission established under "An act to establish public parks in certain counties in this state and to regulate the same (*Pamph. L.* 1895, *p.* 169; *Gen. Stat., p.* 2618) are the property of the county in which the park is situate.

2. The supplement of April 20th, 1906, to the General Tax law of 1903, which supplement provides that "all lands the property of any county, and all lands the property of any taxing district, which are situate within the limits of any other taxing district, shall be subject to taxation by the taxing district within which such lands are situated at the true value of such lands, without regard to any buildings or other improvements 'on such lands" (*Pamph. L.* 1906, *p.* 273), is not in contravention of article 4, section 7, paragraph 12 of the constitution of this state, which directs that "property shall be assessed for taxes under general laws, and by uniform rules, according to its true value."

3. It is not impossible to arrive at the true value of land separate from the buildings and other improvements thereon.

4. The ownership of lands by counties and other municipal corporations forms a reasonable basis for the separate treatment of those lands in matters of taxation.

5. *Query:* Is the act of April 20th, 1906 (*Pamph. L., p.* 273), an act for taxing property within the meaning of the constitution, the act providing for no direct imposition upon any private owner of property, but in effect merely requiring one governmental agency to contribute public moneys towards the support of another governmental agency?

On *certiorari.*

Before Justices HENDRICKSON, PITNEY and TRENCHARD.

For the prosecutor, *Alonzo Church.*

For the town of West Orange, *Simeon H. Rollinson.*

For the board of equalization, *Frederick R. Lehlbach.*

The opinion of the court was delivered by

PITNEY, J.   This writ brings up a tax assessed in the year 1906 by the township of West Orange against the Essex County Park Commission, upon certain land situate in the township; and also brings under review a judgment of the state board of equalization reversing an order of the county board of taxation of Essex county, which board had ordered the tax in question to be struck out of the tax duplicate.

The Essex County Park Commission was organized pursuant to the act of March 5th, 1895, entitled "An act to establish public parks in certain counties in this state and to regulate the same." *Pamph. L.* 1895, *p.* 169; *Gen. Stat., p.* 2618.

The land in question was purchased or condemned by the commission for the purposes of a county park. It was assessed at the sum of $50,000, this being the true value of the land without regard to any buildings or other improvements thereon. There are buildings upon it valued at about $20,000, and the park commission has expended upon the land for other improvements the sum of $100,000.

The tax in question was levied pursuant to the supplement of April 20th, 1906, to the General Tax law of 1903. The latter act (*Pamph. L.* 1903, *p.* 394, § 3, ¶ 2) exempted from taxation "the property of the United States and of the State of New Jersey and of the respective counties, school districts and taxing districts when used for public purposes." The supplement (*Pamph. L.* 1906, *p.* 273) enacts that "all lands the property of any county, and all lands the property of any taxing district, which are situated within the limits of any other taxing district, shall be subject to taxation by the taxing district within which such lands are situated at the true value of such lands, without regard to any buildings or other improvements on such lands, notwithstanding any exemption provided for in the act to which this is a supplement."

It is entirely clear that lands acquired by the Essex county park commission for the purposes of a county park are "property of the county" within the meaning of this tax law. By section 2 of the act for establishing parks (*Pamph. L.*

1895, *p.* 169; *Gen. Stat., p.* 2618) the board is empowered to establish parks available to the inhabitants of the county and to the public, and for this purpose to acquire land in the corporate name of the board *for the benefit of the county.* By section 4, titles to land acquired by condemnation are to pass to the board *in trust for the county.* By section 14, the expenses incurred in establishing the park are to be met by issuing bonds of the county, and these bonds are to be paid off by county taxation. See *Freeholders of Essex* v. *Park Commis-. sion,* 33 *Vroom* 376. In *Ross* v. *Freeholders of Essex,* 40 *Id.* 291, the Court of Errors and Appeals, in dealing with this act, treated it as enabling the populous *counties* to lay out public parks. In *State* v. *Crowley,* 10 *Id.* 264, 270, it was held that money in the control and disposition of the board of chosen freeholders as trustees of the county was the property of the county within the meaning of a criminal statute. See, also, *Hermann & Grace* v. *Freeholders of Essex,* 64 *Atl. Rep.* 742, 744.

It is contended by the prosecutor that the supplemental Tax act of 1906 is unconstitutional because violative of article 4, section 7, paragraph 12 of the constitution of this state, which directs that "property shall be assessed for taxes under general laws, and by uniform rules, according to its true value."

And, first, it is contended that it is impossible to arrive at the true value of real estate for the purpose of taxation without taking into consideration the buildings and other improvements thereon. This point is, we think, sufficiently answered in the recent opinion of this court in *Central Railroad Co.* v. *State Board of Assessors, ante p.* 120. The act before us merely requires that the land be valued separate from the buildings and other improvements, and that the latter be not assessed.

Secondly, it is contended that the act of 1906 provides for the taxation of property otherwise than by uniform rules; and this on the ground that the classification adopted by the act is arbitrary, and that there exists no rational ground for grouping together in one class property owned by municipal

corporations, &c., because the character of such property varies widely.

The basis of classification adopted in this act, however, is not the character of the property taxed (except that the act refers to real estate and not to personal property), but is the ownership of the property by the counties or by the several taxing districts. Since in this state the taxing districts are co-terminous with the political divisions generically known as municipal corporations (see cases cited in *Allison* v. *Corker, Assessor,* 38 *Vroom* 605, &c.), the words "all lands the property of any taxing district," as used in the act, import the ownership of the property by some municipal corporation whose territory is less extensive than a county. The question, therefore, is whether the ownership of lands by counties and other municipal corporations forms a reasonable basis for the separate treatment of those lands in matters of taxation. No doubt it does, if such public ownership necessarily imports a public use; for it has long been settled that property may be classified for purposes of taxation with respect to its user. *State Board of Assessors* v. *Central Railroad Co.,* 19 *Id.* 146; *Tippett* v. *McGrath, Collector,* 41 *Id.* 110, and cases cited; *S. C., affirmed,* 42 *Id.* 338. It seems to us that the mere fact that lands are owned by a county or other municipality necessarily imports that it is to some extent impressed with a public use. These public corporations are but agencies of the state, and they exercise no other than public functions. Where lands owned by them are used for such a purpose as a court-house or a recreation park, the public use is of course manifest. But even where not devoted to such a purpose, we think that nevertheless there is a public use. Take the case of lands purchased at a tax sale, or lands bought in under execution issued to enforce payment of a debt due to the public corporation; while such lands are normally held for a temporary purpose and only to secure the payment of moneys due to the public, yet, while thus held, they are in a sense devoted to the public use, as much so as the moneys themselves for whose payment they are held in pledge.

The Tax law of 1866 wholly exempted the property of the

counties, townships and boroughs from taxation, without expressing any condition based upon the devotion of such property to public use. *Pamph. L.* 1866, *p.* 1078, § 5; *Rev.* 1877, *p.* 1151, *pl.* 64; *Gen. Stat., p.* 3320, *pl.* 200. The act of 1903 (*Pamph. L., p.* 394, § 3, ¶ 2) exempts the property of the counties, &c., "when used for public purposes." It is, of course, necessary to give some force to the quoted words, and they have been held to limit the exemption to property which, *in specie,* is used for public purposes. *City of Perth Amboy* v. *Barker, Collector,* 45 *Vroom* 127.

Nevertheless, for more than a generation prior to the act of 1903, the mere public ownership of property was treated as a basis for wholly exempting it from taxation, and the act of 1866 was not, so far as we recall, challenged for unconstitutionality on that ground. Of course, if public ownership furnishes a sufficient ground in reason for wholly exempting property from taxation, it furnishes a sufficient ground for taxing it on a different basis from property otherwise owned; as, by taxing land as bare land, without increment by reason of buildings or other improvements thereon.

No doubt the explanation for the mode adopted by the legislature in the act of 1906 with respect to taxing land owned by one municipality or taxing district and situate within the bounds of another, is to be found in the fact that the same land, if held in private ownership and devoted to private use, would contribute at least in proportion to its unimproved value to the taxable ratables of the taxing district where it is situate, the buildings being excluded from the valuation on the ground that these are presumably added or at least maintained at the public expense. The act is a compromise between complete exemption and full taxation, evidently based upon a balance of conflicting claims to consideration as between the public agency that owns and controls the property and the public agency within whose jurisdiction it is situate. We cannot say that the result reached is irrational or so wholly unfounded as to render the classification illusory, and the law therefore special and unconstitutional.

The above views are based upon the theory that the act of

1906 is in truth *an act for taxing property,* within the meaning of the constitutional clause that prescribes generality and uniformity and the adoption of a basis of true value. That it is *in form* an act for taxing property is quite clear. That it is such *in substance* is by no means so clear. The act seems to differ from an ordinary tax law in that it does not provide for a direct imposition upon any private owner of property. In effect it merely requires one public agency to contribute towards the support of another public agency, both agencies existing for purposes of government in and for the several localities in question. The act of 1906 therefore merely requires public moneys to be taken from one public agent and paid to another. Since, however, this question was not fully discussed by counsel, we leave it undetermined, and base our decision upon the view that the act of 1906, treated as an act for taxing property within the meaning of the constitution, is not in violation of that instrument.

No other ground for reversal being urged, the tax and judgment under review should be affirmed, with costs.