THE PHILADELPHIA, BALTIMORE AND WASHINGTON RAIL-
ROAD COMPANY, a corporation,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON.

*New Castle, March 12, 1948.*

*S. Samuel Arsht,* of Morris, Steel, Nichols & Arsht, for plaintiff.

*David F. Anderson,* City Solicitor, for defendants.

HARRINGTON, Chancellor: This case involves the validity of a tax levied by the City of Wilmington for city and school purposes against property on which are erected buildings, commonly known as the "Wilmington Shops" of the Pennsylvania Railroad Company. The plaintiff's bill to enjoin the collection of the tax and to determine its rights is based on *Chapter* 106, *Volume* 21, *Laws of Delaware,* approved May 20, 1898, which provides:

"Section 1. It shall be the duty of the Board of Assessment, Revision and Appeals, in the City of Wilmington, as at present constituted, immediately after the annual assessment is made in each year for city and school purposes in said City, to classify the real estate so assessed in such a manner as to discriminate between the rural or suburban, and the built up portion of said City; and they are hereby required to certify to the Council of said City on or before the first day of June in each year, the valuation of the built up portions and the valuation of the rural or suburban property respectively; and it shall be the duty of the Council in determining the rate of taxation for each year to levy a tax upon said rural or suburban property equal to one-half of the highest rate of tax required to be levied for said year; so that upon the real estate assessed in said City there shall be two rates of taxation.

"During the sittings of said Board of Assessment, Revision and Appeals in the month of April of each year any person interested shall be privileged to appeal to said Board as to the classification of any real estate under this act and it shall be the duty of said Board to hear such appeal and to determine the same according to justice and right.

"Section 2. It shall be the duty of the Assessors of said City to make assessments of property in conformity with the provisions of this act and to designate on their respective assessment lists the class in which said property shall be rated."

For many years the plaintiff has been the owner of a tract of land containing 36.38 acres, located in the northeast corner of the corporate limits of the City of Wilmington, bounded on the north by the city line and other lands belonging to the plaintiff, on the east and south also by lands of the plaintiff, and on the west by the main tracks or right of way of the Pennsylvania Railroad Company. It composes a part of the section of the city commonly known as the "Cherry Island Marsh". For many years prior to 1947 it was classified by the Board of Assessment of the City of Wilmington as rural or suburban property within the meaning of the Act of May 20, 1898. For the fiscal year beginning July 1, 1947, the Board, however, reclassified it from rural or suburban to property located in the built-up portion of the city and taxed it at the full rate. The land in question was originally marshland and was filled in by the plaintiff at its own expense, and substantially all of the adjacent land, except that west of the railroad tracks, is still marshland. The buildings thereon were erected on pilings. While the land taxed contains more than thirty-six acres, Todd's Lane is the only city street which approaches it, and it ends on the western side of the Pennsylvania Railroad tracks and, therefore, cannot be used as a means of access to the railroad property by automobiles or other vehicles. The plaintiff company has, however, constructed a foot bridge across the railroad tracks at the eastern end of Todd's Lane which can only be reached by the use of steps. Vandever Avenue of the City of Wilmington approaches other lands of the plaintiff company, some dis-

tance south of the "Wilmington Shops" and the only access to the latter by automobile or other vehicles is by a private road built by the plaintiff company over such adjoining lands and connecting with that avenue. With the exception of the old house on what was originally the Todd land, a neighboring house and a building used for the manufacture of purina, which is only partly within the northern limits of the city, no house or other building is nearer the plaintiff's land than approximately one-third of a mile to the west of it.

It appears from the agreed statement of facts that "there has been no change, for many years in the nature or character of the lands and properties which adjoin and surround" plaintiff's land. The testimony shows that two Federal Housing Projects were developed on or near Vandever Avenue during the war: the Wilmington Housing Project or Eastlake Village, on Heald and Thatcher Streets, and the Riverview Park Development, on Claymont and Bowers Streets. Both are located, however, on land that has always been classified as urban or built-up property and are not less than six city blocks, or one-third of a mile, from the plaintiff's land. Eastlake Village is west of the Governor Printz, or North East Boulevard (which runs in a general northeasterly and southwesterly direction), and approximately six squares south of the Wilmington Baseball Park, which is on the west side of the boulevard and bounded on the north by Thirtieth Street, intersecting Todd's Lane at an angle a short distance east of the boulevard. The Riverview Park Development is on the east side of the boulevard. There are no city sewers on the plaintiff's property, and all sewage or drainage is taken care of by the plaintiff at its expense. The water supply is furnished by a private company affiliated with the plaintiff and likewise at the plaintiff's expense. There is, however, a standby connection with the city's water system which is maintained for emergency purposes only. The city does not light or clean the streets or roads on the tract or maintain them;

nor does it collect the trash or garbage. All of this is done at the plaintiff's expense.

Prior to the year 1947, the Board of Assessment classified many of the outlying sections of the city, adjacent to the line, as rural or suburban property, but in that year it reclassified practically all of that property and assessed it at the full tax rate. In fact, the only land assessed by the Board as rural or suburban property in 1947 was marshland. The tax levied against the plaintiff's property for the year 1947 amounted to $16,753.20 and, had it been classified by the Board of Assessment as rural or suburban property, would have been half that amount ($8,376.60). The plaintiff appealed from the classification made by the Board but its appeal was denied. It then tendered the tax due, based on the one-half rate, alleged to have been provided for by the statute, but the city tax collector refused to accept that sum, and this action was instituted.

The pleadings raise three questions: (1) Whether the Board of Assessment of the City of Wilmington, in disregard of the facts, violated the plaintiff's rights by classifying its property for city and school tax purposes for the year beginning July 1, 1947 as real estate constituting a part of the built-up portion of the city and not as rural or suburban property; (2) whether the Act of May 20, 1898, *Chapt.* 106, *Vol.* 21, *Laws of Del.*, was impliedly superseded and repealed by *Chapter* 121, *Volume* 28, *Laws of Delaware*, enacted in 1915; and (3) whether, in any event, *Section* 1 *of Chapter* 106, *Volume* 21, *Laws of Delaware*, violated *Article VIII, Section* 1 of the *Delaware Constitution of* 1897.

The second and third questions will be considered first.

The 1915 Act did not expressly repeal the prior Act of May 20, 1898, but merely purported to repeal "All acts or parts of acts manifestly inconsistent" therewith. Repeals by implication are not favored by the courts and in order for a subsequent Act to have that effect its provisions must be wholly inconsistent and irreconcilable with the

prior Act. *State v. Fahey,* 2 *W.W.Harr.* (32 *Del.*) 504, 126 *A.* 730; *State v. Donovan,* 5 *Boyce* 40, 90 *A.* 220; *Mayor & Council of Wilmington v. State of Del.,* 5 *Terry* (44 *Del.*) 332, 57 *A.2d* 70. Repugnancy, and not a mere difference in the provisions of the two Acts, is the controlling question. *Mayor & Council of Wilmington v. State of Del., supra.* Subsequent statutory provisions sometimes justify the conclusion that they were intended to cover the entire subject matter of the prior Act, and therefore, to supersede it, but the language used must be so manifestly clear and comprehensive as to be conclusive evidence of the legislative intent. *State v. Donovan, supra; Town of Seaford v. Eastern Shore Pub. Service Co.,* 2 *Terry,* (41 *Del.*) 438, 24 *A.2d* 436; *State ex rel DuPont, Tax. Commissioner, v. Bradford,* 7 *W.W.Harr.* (37 *Del.*) 289, 183 *A.* 316.

*Section* 1 of the Act of 1898 provides: "immediately after the annual assessment is made * * * for city and school purposes", it shall be the duty of the Board of Assessment, Revision and Appeals "to classify the real estate so assessed in such a manner as to discriminate between the rural or suburban, and built up portion of said City; * * *." The Board is also required to certify to the City Council "the valuation of the built up portions and the valuation of the rural or suburban property respectively." Furthermore, it is the duty of Council "in determining the rate of taxation for each year to levy a tax upon said rural or suburban property equal to one-half of the highest rate of tax required to be levied for said year; so that upon the real estate assessed in said City there shall be two rates of taxation."

The same section also provides for an appeal to the Board from any classification of real property made by it.

*Section* 2 requires the City assessors to make assessments "in conformity with the provisions of this act and to designate on their respective assessment lists the class in which such property shall be rated."

The 1915 Act, *Chapt.* 121, *Vol.* 28 *Laws of Del.*, provides for the appointment of a Board of Assessment in place of the old Board of Assessment, Revision and Appeals.

## *Sections* 7 and 8 are the most important.

"Section 7. The said Board of Assessment shall have full charge of any and all assessments for city and school taxes, and shall have and be invested with all the powers of The Council to adopt all such needful and necessary rules and regulations as they may deem necessary and expedient to make good, fair, equal, faithful and complete assessments of property in the City of Wilmington for city and school purposes, and the said Board of Assessment shall have and possess the right and powers to make good, perfect, effective and operative any and all rights, powers and duties now possessed by or imposed upon the Board of Assessment, Revision and Appeals, and the Assessors and Collectors for the City of Wilmington or heretofore possessed or imposed upon the said Board of Assessment, Revision and Appeals, and the Assessors and Collectors for the City of Wilmington under and by virtue of the Charter, Laws, Ordinances, Resolutions, Rules and Regulations concerning the assessment of property for taxes for City and school purposes, required to be made by the said Board of Assessment, Revision and Appeals and the Assessors and Collectors for the City of Wilmington.

"Section 2. All real estate within the said City shall be assessed, except real estate belonging to the United States, the State of Delaware, New Castle County, the City of Wilmington, cemeteries and burying grounds, churches and meeting houses belonging to any religious society and used for public worship, real estate belonging to charitable corporations and not held by way of investment, buildings owned and occupied by fire Companies, and such other real estate which may now, or which may hereafter be exempted by law. The assessment of real estate shall be made according to a certain rate in and upon every hundred dollars of the estimated full value of the property assessed, and so pro rata. All assessments upon real estate shall be so made as to show separately the valuation of ground, the improvements if any, and the total valuation of the property assessed, and such property shall be described with such particularity as will enable it to be clearly identified, and the name of the owner or last owner or reputed owner shall be given, if known. Such name will be regarded as an aid to identify such property, but a mistake in the name of the owner, last known owner or reputed owner, or the absence of name, shall not affect the validity of the assessment of any tax based thereon."

Under *Section* 7 the members of the new Board of Assessment are given "full charge of any and all assessments for city and school taxes" and all of the powers of Council to adopt such needful rules "as they may deem necessary and expedient to make good, fair, equal, * * * and complete assessments of property." They are also given the "powers to make * * * effective and operative any and all rights, powers and duties now * * * or heretofore possessed or imposed upon" the old Board of Assessment, Revision and Appeals, and the assessors and collectors for the City "by virtue of the Charter, Laws, Ordinances * * * Rules and Regulations concerning the assessment of property for City and school purposes."

*Section* 8 provides (1) that "all real estate within the said City shall be assessed" except certain specifically exempted real estate and such other real property as may now or hereafter be exempted; (2) "the assessment of real estate shall be made according to a certain rate in and upon every hundred dollars of the estimated full value of the property assessed, and so pro rata"; and (3) "all assessments upon real estate shall be so made as to show separately the valuation of ground, the improvements if any, and the total valuation of the property assessed * * *."

The words "assessed" or "assessment", when applied to taxation may have a broad or a narrow meaning, depending upon the context of the statute. 6 *C.J.S., Assessment, page* 1024; 61 *C.J.* 618; *Webster's Inter. Dict.* They may, therefore, mean merely the valuation of property, or may include the entire method of imposing the tax. 61 *C.J.* 618; see also *Rhoads v. Given,* 5 *Houst.* 183. The word "assessment" seems to have been used in the broad sense in at least a part of Section 8. In any event, that section is not inconsistent with the 1898 Act and does not impliedly repeal it.

The determination of the constitutional question is more difficult. As we have seen, the Act of 1898 discriminates in the tax rate on real property "between the rural

or suburban, and the built-up portion" of the City of Wilmington. To that end, in each year after the assessment has been made, the taxable property is to be classified and "the valuation of the built up portion and the valuation of the rural or suburban property respectively" are to be certified to the City Council. The Act then provides for two rates of taxation and a levy on "rural or suburban property" at one-half the highest rate required for the year.

*Section* 1, *Article VIII* of the *Constitution of* 1897 provides:

"All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the General Assembly may by general laws exempt from taxation such property as in the opinion of the General Assembly will best promote the public welfare."

The City claims that the statute in question does not provide for taxes that are "uniform upon the same class of subjects", and therefore violates that constitutional provision.

Under the language of *Section* 1, *Article VIII*, it is, necessarily, conceded that the Legislature has the right to classify property for the purpose of taxation, provided the classification adopted is reasonable and not purely arbitrary. 1 *Cooley on Tax.*, §§ 292, 333, 334; *Conrad v. State,* 2 *Terry* (41 *Del.*) 107, 16 *A.2d* 121; *State v. Pinder,* 7 *Boyce* 416, 108 *A.* 43; *Roup's Case,* 812½ Pa. 211.

The constitutionality of a legislative Act is always presumed and its invalidity must be shown by the party attacking it. *Conrad v. State, supra.* Moreover, when a classification is questioned, if any facts can reasonably be conceived which will sustain it, their existence must be assumed. 1 *Cooley on Tax.*, § 334; *Conrad v. State, supra; Zink v. Kessler Trucking Co.,* 8 *W. W. Harr.* (38 *Del.*) 271, 190 *A.* 637; *Tribbett v. Village of Marcellus,* 294 *Mich.* 607, 293 *N.W.* 872. Each case necessarily depends upon its own circumstances and various factors may often be import-

ant in determining the question (*Conrad v. State, supra; Commonwealth v. Del. Div. Canal Co.*, 123 *Pa.* 594, 16 *A.* 584, 2 *L.R.A.* 798), but where real property within the same territorial limits is classified for tax purposes, inherent differences in its nature or character, and even in its use, may be sufficient. 1 *Cooley on Tax.*, § 335; *Shotwell v. Dalrymple*, 49 *N.J.L.* 530, 10 *A.* 386; *Essex County, Park Comm. v. West Orange*, 75 *N.J.L.* 376, 67 *A.* 1065; *Apartment Operators' Ass'n. v. Minneapolis*, 191 *Minn.* 365, 254 *N.W.* 443; 61 *C.J.* 129. It seems, however, that classifications based entirely on location of such property are seldom sustained. 1 *Cooley on Tax.*, § 335; *Essex County Park Comm. v. West Orange*, 77 *N.J.L.* 575, 73 *A.* 511; *In re State Taxation*, 97 *Me.* 595, 55 *A.* 827; *Monaghan v. Lewis*, 5 *Pennewill* 218, 59 *A.* 948, 10 *Ann.Cas.* 1048; *cf. Village of Hardwick v. Town of Wolcott*, 98 *Vt.* 343, 129 *A.* 159, 39 *A.L.R.* 1222. Somewhat the same principles are ordinarily applicable in determining whether exemptions of property from taxation by general law are based on reasonable classifications. 1 *Cooley on Tax.*, §§ 280, 336; *Fidelity, Trust Co. v. Vogt*, 66 *N.J.L.* 86, 48 *A.* 580; *Tippett v. McGrath*, 70 *N.J.L.* 110, 56 *A.* 134, *Id.*, 71 *N.J.L.* 338, 59 *A.* 1118; *Martin v. Reynolds*, 125 *Ark.* 163, 188 *S.W.* 4.

In determining the meaning of the statute, we must bear in mind that the word "rural" means the country; "of or pertaining to the country, as distinguished from a city or town; belonging to or characteristic of the country." *Cent.Dict.; Webster's Inter.Dict.*, 54 *C.J.* 1113. It is the antithesis of "urban" which means "of or belonging to a city or town". *Cent. Dict.* As the plaintiff points out, rural property may, therefore, include land used for agricultural purposes, as well as lands which are wholly undeveloped for city uses. See 22 *Amer. & Eng. Ann.Cas.* 347; 44 *C.J.* 1303; *Web.Inter.Dict. "Rural"*. Standing alone, and unaffected by the context of the statute, suburban property, however, seems to be that which is located in the outskirts of a city or town. *Cent. Dict.* If the phrase "rural or sub-

urban" be regarded as creating two separate and distinct classifications, the validity of the latter class might, therefore, be subject to question, but as both words appear in the same phrase of the sentence, I agree with the plaintiff's contention that one and the same classification is intended. See *Monaghan v. Lewis, supra;* 44 *C.J.* 1303. Rural property within the limits of a city may be, and usually is, in the outskirts, and it is reasonably possible to conclude that the subsequent and accompanying word "suburban" in the phrase was used in the alternative sense, and also means rural property. Because of its nature and use, such property ordinarily derives little or no benefit from being included in the city limits. See 44 *C.J.* 1303.

The classification adopted by the statute does not appear unreasonable, and it seems to follow that there is no lack of uniformity in the taxation provided for. See *Commonwealth v. Delaware Div. Canal Co.,* 123 *Pa.* 594, 16 *A.* 584, 2 *L.R.A.* 798. Whatever the rule may be, if the constitution merely provides for equality or uniformity in taxation (see 61 *C.J.* 136), Judge Cooley points out that if it "provides that taxes shall be uniform upon the 'same class' of subjects, then, of course, different rates may be fixed for different classes, provided the classification is not purely arbitrary." *Cooley on Tax.,* 292, *supra;* see also 51 *Amer. Jur.* 218. Uniformity on the same class of subjects only requires that all property, similarly situated, in the territorial limits of the authority levying the tax shall be treated alike. *Moore v. School Dist. of Pittsburgh, et al.,* 338 *Pa.* 466, 13 *A.2d* 29; *State v. Minn. Farmers Mut. Ins. Co.,* 145 *Minn.* 231, 176 *N.W.* 756; see also *Atlantic & N. C. R. Co. v. City of Newbern,* 147 *N.C.* 165, 60 *S.E.* 925; *Com. v. Edgerton Coal Co.,* 164 *Pa.* 284, 304, 30 *A.* 125, 129; *Com. v. Merchants & Mfgs. Nat. Bank,* 168 *Pa.* 309, 320, 31 *A.* 1065. *The City of Kansas v. Cook,* 69 *Mo.* 127 and *Leicht v. City of Burlington,* 73 *Iowa* 29, 34 *N.W.* 494, applied these principles in sustaining legislation exempting undeveloped lands, exceeding a specified small acreage,

from municipal taxation. Many municipal charters in this State contain similar provisions which, apparently, have not been questioned. Some cases hold that lands used for agricultural purposes cannot be taxed at a lower rate than other property within the municipality. *Knowlton v. Rock County,* 9 *Wis.* 410; *Hayward v. People,* 145 *Ill.* 55, 33 *N.E.* 885; see also *Cooley on Tax.* § 293. But under the language of our constitution, I think a more liberal rule is justified, though it must be conceded that neither *Roup's Case,* 812½ *Pa.* 211 nor *Daly v. Morgan,* 69 *Md.* 410, 16 *A.* 287, 1 *L.R.A.* 757, is quite consistent with *Monaghan v. Lewis, supra.* *Knowlton v. Rock County* and *Hayward v. People* involved constitutional provisions quite different from *Section 1, Article VIII* of our constitution and did not discuss the right to classify property for tax purposes. See *Cooley, on Tax.,* § 290, *p.* 607, *note.* Nor does *Monaghan v. Lewis* support the city's contention that the statute of 1898 violates *Section 1, Art. VIII* of the *Delaware Constitution.* That case involved the legislative Act of March 22, 1897, *Chapt.* 555, *Vol.* 20, *Laws of Del.,* which provided that all property in the City of Wilmington bounded by certain designated streets should be taxed at not exceeding one-quarter of the regular rate. The Act recited that the plot in question had but two dwelling houses erected thereon, and derived no benefit from being within the limits of said city and would not derive any benefit for years to come.

The court said [5 *Pennewill* 218, 59 *A.* 950] that the 1897 Act "was a special and not a general law, and provided a mode of taxation which was not uniform upon the same class of subjects within the territorial limits of the authority levying the same." The classification adopted by the statute seems to have been based, however, on the location of the property, and not on any inherent differences in its nature, character or use. If the remainder of the plot consisted of undeveloped lots, the recital in the statute shows that there were two dwelling houses erected thereon. The statement that "it is impossible to believe that the Legisla-

ture in passing said Act of 1898 intended that thereafter property of the same character, situated in different parts of the city, should be taxed at different rates" is not pertinent to the determination of this case. It was made in considering whether the Act of 1898 had impliedly repealed the 1897 Act.

But these conclusions do not determine this case. The plaintiff's bill merely alleges that the act of the City Board of Assessment in levying the tax at the full rate was illegal. This is largely because its property is, at least, one-third of a mile, or six blocks, from the built-up portion of the city, and does not have the usual city advantages and conveniences. The character or use of such property, and not its distance from the built-up portion of the city, is, however, the controlling factor in determining whether it is rural. *Gillette v. City of Hartford*, 31 *Conn.* 351; 44 *C.J.* 1303; see also *Web.Inter.Dict. "Rural"*. The evidence shows that the property in question consists of approximately 36 acres of land, upon which are erected at least thirty-seven buildings, known as the Wilmington Shops of the Pennsylvania Railroad Company. It also shows that the buildings are used for the construction and repair, on a wide scale, of railroad engines, cars and other equipment, and that hundreds of people are employed there by the plaintiff's lessee. Property of that nature and used for that purpose can hardly be termed "rural".

The plaintiff's bill is, therefore, dismissed, and a decree will be entered accordingly.