**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 4, 2025

Ashley R. Altschuler, Esquire
Kevin M. Regan, Esquire
Anna F. Martin, Esquire
McDermott Will & Schulte LLP
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801

Max B. Walton, Esquire
Michael J. Hoffman, Esquire
Matthew F. Boyer, Esquire
Grace E. Best, Esquire
Connolly Gallagher LLP
267 East Main Street
Newark, Delaware 19711

Nicholas J. Brannick, Esquire
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801

Michael P. Stafford, Esquire
Mary F. Dugan, Esquire
Michael A. Laukaitis, II, Esquire
Alpa V. Bhatia, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 N. King Street
Wilmington, Delaware 19801

RE:   *Newark Property Association et al. v. State of Delaware et al.*,
C.A. No. 2025-1031-LWW

Dear Counsel:

On October 30, I issued an opinion upholding the lawfulness of House Bill
242.  New Castle County plans to promptly implement the statute.  The plaintiffs, a

group of property and business associations, now ask that I enjoin the County from doing so while they appeal my decision. The defendants, which include the State of Delaware, New Castle County officials, and various school districts, argue against any pause. As explained below, the plaintiffs' request is denied.

## I.   BACKGROUND

The background of this action is detailed in my October 30, 2025 post-trial opinion.[1] At a high level, the case is a challenge to House Bill 242 (HB242), a temporary tax law passed by the Delaware General Assembly on August 12, 2025. HB242 was enacted in response to public outcry over property tax increases that resulted from a separate, court-ordered county-wide property reassessment. The law permitted New Castle County school districts—for the 2025-2026 tax year only—to create a split-rate tax system. School districts set a higher tax rate on non-residential properties (such as apartment buildings and hotels) and a lower rate on residential properties, which shifted a portion of the tax burden off homeowners. The plaintiffs,

---

[1] The defendants are the State of Delaware; Governor Matt Meyer; Marcus Henry, New Castle County Executive; David Del Grande, Acting Chief Financial Officer of New Castle County; and several school boards: Appoquinimink School District Board of Education, Brandywine School District Board of Education, Christina School District Board of Education, Colonial School District Board of Education, New Castle County Vocational Technical School District Board of Education, and Red Clay Consolidated School District Board of Education.

four associations representing non-residential property owners,[2] sued to block HB242, arguing that it was unconstitutional and illegal on six grounds.

After an expedited trial on a paper record, I found in favor of the defendants. I ordered the County to include with its tax bills a notice of any property reclassification and a description of the policy for disputing reclassifications. Otherwise, I denied the plaintiffs' requests for declaratory and injunctive relief.[3]

Later that day, the plaintiffs moved for a stay pending appeal.[4] They seek to prevent enforcement of my judgment until their expedited appeal to the Delaware Supreme Court is resolved.[5] The practical effect of the motion, if granted, would be to prevent the defendants from issuing revised school district property tax bills.[6] The plaintiffs also ask that I waive the requirement to post a bond, which would otherwise

---

[2] The plaintiffs are Newark Property Association, Delaware Apartment Association, First State Manufactured Housing Association, and Delaware Hotel & Lodging Association.

[3] Post-Trial Op. (Dkt. 112) ("Op.") 58; *see also* Final Order and Entry of J. (Dkt. 114).

[4] Pls.' Mot. for a Stay Pending Appeal (Dkt. 115) ("Mot.").

[5] Mot. ¶¶ 14, 33; *see Newark Prop. Ass'n v. State*, No. 449, 2025 (Del. Nov. 1, 2025) (ORDER).

[6] *See* Mot. ¶¶ 2, 29.

cover any losses the defendants suffer from a delay in tax collection.[7] The defendants opposed the motion on November 3.[8]

## II. ANALYSIS

The court's authority to grant a stay pending appeal is governed by several provisions. Court of Chancery Rule 62(d) states that "[s]tays pending appeal and stay and cost bonds shall be governed by" Delaware Supreme Court rules and Article IV, Section 24 of the Delaware Constitution.[9] The relevant Supreme Court rule, Rule 32(a), requires that a "motion for stay . . . be filed in the trial court in the first instance[,]" giving this court wide latitude to decide the motion.[10] Article IV, Section 24 establishes a key condition, stating that there "shall be no stay of proceedings in the court below unless the appellant or plaintiff in error shall give sufficient security to be approved by the court below or by a judge of the Supreme Court."[11]

---

[7] *Id.* ¶¶ 34-35.

[8] Defs.' Opp'n to Pls.' Mot. for a Stay Pending Appeal (Dkt. 199) ("Opp'n").

[9] Ct. Ch. R. 62(d).

[10] Supr. Ct. R. 32(a).

[11] Del. Const. art. IV, § 24.

When reviewing a request for a stay pending appeal, this court is guided by the four *Kirpat* factors: (1) "a preliminary assessment of likelihood of success on the merits of the appeal"; (2) "whether the petitioner will suffer irreparable injury if the stay is not granted"; (3) "whether any other interested party will suffer substantial harm if the stay is granted"; and (4) "whether the public interest will be harmed if the stay is granted."[12]  No single factor is dispositive.[13]  The plaintiffs "bea[r] the burden of showing [such relief] is warranted."[14]  Here, the analysis is "particularly complex" because the requested stay is effectively an injunction, and the "'entry of an injunction pending an appeal' that would mimic . . . the request for relief already rejected 'is an unusual occurrence.'"[15]

The first *Kirpat* factor—likelihood of success—is not interpreted literally.  As the Delaware Supreme Court has recognized, a strict reading would "lead most probably to consistent denials of stay motions . . . because the trial court would be

---

[12] *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357 (Del. 1998).

[13] *Id.* at 358.

[14] *In re AMC Ent. Hldgs., Inc. S'holder Litig.*, 2023 WL 5165606, at *42 (Del. Ch. Aug. 11, 2023); *see Frankino v. Gleason*, 1999 WL 1063071, at *1-2 (Del. Ch. Nov. 12, 1999).

[15] *Rosenbaum v. CytoDyn Inc.*, 2021 WL 4890876, at *1 (Del. Ch. Oct. 20, 2021) (citation omitted).

required to first confess error in its ruling."[16]  The other three factors are typically assessed before the court turns to whether the movant has presented a "fair ground for review by our Supreme Court."[17]  I take that approach here, and begin with the second factor.

### A.    Irreparable Injury (Factor 2)

The second *Kirpat* factor requires the plaintiffs to demonstrate they will suffer "irreparable injury" absent a stay.[18]  To meet this standard, the alleged harm must be imminent and concrete.  It cannot "adequately be compensated by a monetary award alone."[19]

The plaintiffs argue that they meet this standard.  They claim that issuing new, split-rate tax bills will "drastically increase [their] members' costs, trigger[] the acceleration of loan repayment obligations," and divert "funds away from operations."[20]  They fear that these increased costs will cause their members to "permanently lose new business opportunities" and even "lose their properties to

---

[16] *Kirpat*, 741 A.2d at 358.

[17] *CytoDyn*, 2021 WL 4890876, at *1.

[18] *Kirpat*, 741 A.2d at 357.

[19] *Bali v. Christiana Care Health Servs., Inc.*, 1999 WL 413303, at *4-5 (Del. Ch. June 16, 1999).

[20] Mot. ¶ 30.

foreclosure."[21]  Such harms, they contend, could not be "unscramble[d]" if they prevail on appeal.[22]

These arguments are unpersuasive for two reasons.

First, the harm is not imminent.  The Delaware Supreme Court is scheduled to hear oral argument on the appeal on November 10.[23]  The defendants have confirmed the earliest new tax bills could be issued is November 18.[24]  Thus, no adverse effects from the issuance of the bills will occur before the appeal is heard. And as the defendants note, no one will "lose their property to foreclosure in less than two weeks."[25]  Foreclosure proceedings "normally take months, not days," by which point a final decision on the appeal will likely have been rendered.[26]

---

[21] *Id.*

[22] *Id.* ¶ 29 (citing *Police & Fire Ret. Sys. of Detroit v. Bernal*, 2009 WL 1873144, at *2 (Del. Ch. June 26, 2009)).

[23] *Newark Prop. Ass'n v. State*, No. 449, 2025 (Del. Nov. 1, 2025) (ORDER).

[24] Opp'n ¶ 17.

[25] *Id.* ¶ 4.

[26] *Id.* ¶ 17; *see Lechliter v. Del. Dep't of Nat. Res. & Envt'l Control*, 2013 WL 5718888, at *3 (Del. Ch. Oct. 22, 2013) ("Harm is not . . . imminent where . . . it is months from arising.").

Second, the alleged adverse effects are indefinite. Vague claims of potential future injuries cannot, by themselves, establish irreparable harm.[27] Here, the effects of increased property taxes for one year are highly individualized. Beyond lost dollars—remediable by damages—the downstream effects of higher taxes involve a confluence of intervening factors, including the plaintiffs' members' own financial situations and business decisions.[28]

Because the plaintiffs have not shown they will suffer harm that is both imminent and non-speculative, the second *Kirpat* factor is unmet.

### B.  Substantial Harm and the Public Interest (Factors 3 and 4)

The third and fourth factors of the *Kirpat* analysis ask whether "any other interested party will suffer substantial harm" and "whether the public interest will

---

[27] *See Lechliter*, 2013 WL 5718888, at *3 (explaining that "attenuated and speculative" harms cannot show "irreparable harm to the [p]laintiff's interests" (citing *Alpha Builders, Inc. v. Sullivan*, 2004 WL 5383570, at *5 (Del. Ch. Nov. 5, 2004))). *Contra Kirpat*, 741 A.2d at 358 ("It is undisputed on this record that, if a stay is not granted, then Kirpat will suffer the seizure of its inventory, loss of its customer base, and loss of its employees.").

[28] *See, e.g.*, Dkt. 2 (declarations from plaintiffs).

be harmed" if the stay is granted.[29]  In this case, the factors are intertwined.  They weigh against granting the motion.

The plaintiffs argue that the public interest favors a stay because "substantial public confusion" would ensue if tax bills are issued now "only to have the Supreme Court reverse that action later."[30]  But the confusion the plaintiffs wish to avoid is hypothetical.  The injury a stay would inflict is immediate and substantial.

The "public" affected by this case includes over 200,000 taxpayers who have already "faced uncertainty over whether they will receive new tax bills, when they might receive those new tax bills, and whether they should pay their old tax bills."[31]  This litigation has pushed the billing schedule to its limit.[32]  A stay would exacerbate the problem.

A stay would also inflict significant financial harm on certain defendants.  The delayed bills are depriving the County and school districts of approximately $549

---

[29] *Kirpat*, 741 A.2d at 357, 359.

[30] Mot. ¶ 33.

[31] Opp'n ¶ 18.

[32] The General Assembly could choose to extend the payment deadline until after the appeal is resolved.  But the General Assembly is a non-party in this suit.  Whether it may take up an extension is both unknown and outside my purview.  *See id.* ¶ 19.

million in revenue.[33]  Because those defendants earn interest on the funds they collect, the delay is causing a loss of investment income that exceeds an estimated $8 million over a 60-day period.[34]  This is not an abstract loss but a direct financial blow to public entities on which residents and students rely.

The tangible financial harm to the defendants is heightened by the plaintiffs' request to waive the bond requirement.  The plaintiffs assert that they need not post a bond because there is "no money judgment" and "no risk that [the d]efendants will be harmed."[35]  Not so.  As explained, the defendants face a quantifiable financial loss.  Yet the plaintiffs ask to enjoin the collection of public funds while refusing to post security for the multimillion-dollar losses the stay itself would inflict.[36]

The plaintiffs' concern about public confusion from a potential reversal of my decision—a concern mitigated by the Supreme Court's expedited appeal schedule—

---

[33] *Id.* ¶ 29.

[34] *Id.* ¶ 30.  This 60-day period "ru[ns] from entry of the [final order] until the County and School Districts might reasonably expect to collect the tax revenue suspended due to this litigation."  *Id.* ¶ 32.

[35] Mot. ¶ 35.

[36] *See Fisk Ventures, LLC v. Segal*, 2009 WL 1478490, at *2 (Del. Ch. May 15, 2009) ("The primary purpose of a bond is to protect the appellee from losing the benefit of the judgment through the delay or ultimate non-performance by appellant.").

does not outweigh the harm a stay would impose on the defendants and County residents. The public interest lies in resolving this uncertainty, not extending it.

### C. Likelihood of Success on Appeal (Factor 1)

Having found that the second through fourth factors weigh against a stay, I now address the first factor: likelihood of success on appeal. I must determine "as objectively as possible"[37] whether the appeal "presents a substantial question that is a fair ground for litigation and . . . more deliberative investigation."[38]

This standard may be met if the case involves a "novel issue" or "unsettled areas of Delaware law."[39] Here, the plaintiffs have focused their appeal on two issues: the Uniformity Clause (Count I) and revenue neutrality (Count V). Both counts present novel questions that warrant appellate review.[40]

Count I concerns whether the Uniformity Clause prohibits the General Assembly from classifying residential and non-residential property for purposes of

---

[37] *Wynnefield P'rs Small Cap Value L.P. v. Niagara Corp.*, 2006 WL 2521434, at *1 (Del. Ch. Aug. 9, 2006) (citation omitted).

[38] *Kirpat*, 741 A.2d at 358 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

[39] *Huntington Way Assocs., LLC v. RRI Assocs. LLC*, 2023 WL 5664115, at *3 (Del. Ch. Sept. 1, 2023) (citation omitted).

[40] Counts I and V are the only two counts of six that the plaintiffs have appealed. *See* Mot. ¶¶ 17, 18, 24.

setting different tax rates.[41]  My conclusion that the classification was permissible rested on established Delaware precedent holding that the test is the "reasonableness of the classification" and that classifications will be disturbed only if "clearly arbitrary."[42]  But the Delaware Supreme Court has not spoken on this precise issue of property classification.[43]  The plaintiffs argument, though I rejected it, raises a constitutional question that is a "fair ground" for "more deliberative investigation."[44]

Count V presents a novel question of statutory interpretation: whether the reclassification of properties after the school boards set rates violated HB242's revenue-neutrality requirement.[45]  My ruling was based on the plain meaning of "projected," following settled principles of statutory interpretation.[46]  But the

---

[41] *Id.* ¶¶ 17-23.

[42] *See* Op. 18-19 (citing, *inter alia*, *Wilm. Med. Ctr., Inc. v. Bradford*, 382 A.2d 1338, 1344 (Del. 1978) (stating that the test of constitutionality is "the reasonableness of the classification"), and *Aetna Cas. & Sur. Co. v. Smith*, 131 A.2d 168, 177-78 (Del. 1957) (stating that classifications drawn by the General Assembly will only be disturbed if "clearly arbitrary")).

[43] The Court of Chancery has endorsed the view that the "inherent differences" in the nature, character, or use of real property are "sufficient" to draw classifications between different property types under the Uniformity Clause. *Phila., B. & W. R. Co. v. Mayor & Council of Wilm.*, 57 A.2d 759, 765-66 (Del. Ch. 1948).  This proposition predates HB242. *See* Op. 6; *see also* Mot. ¶ 2.

[44] *Kirpat*, 741 A.2d at 358.

[45] Mot. ¶ 24.

[46] Op. 55.

General Assembly enacted HB242 in August 2025, and my opinion is the first and only judicial interpretation of the statute.[47]

Because both issues on appeal are novel and present substantial legal questions, the first *Kirpat* factor favors a stay.

*            *            *

The *Kirpat* analysis requires the court to "balance all of the equities involved in the case together."[48]  The second through fourth factors favor the defendants; the first factor supports the plaintiffs.  Viewed collectively, they weigh decisively against a stay.[49]  The relevant public interests—taxpayer certainty and County financial stability—bolster that result.[50]

---

[47] *Id.* at 6; *see also* Mot. ¶ 2.

[48] *Kirpat*, 741 A.2d at 358 (Del. 1998).

[49] *See id.* (stating that "[i]f . . . three factors strongly favor interim relief, then a court may exercise its discretion to reach an equitable resolution" and vice versa); *see also Gleason*, 1999 WL 1063071, at *2 (declining to stay a judgment because "three factors of the inquiry weigh against" the relief).

[50] *See State Ins. Dep't v. Remco Ins.*, 1986 WL 3419, at *2 (Del. Ch. Mar. 18, 1968) (explaining that where the relief sought is non-monetary, the court must be "sensitive to the particularities of the various interests impacted by the judgment").

## III.  CONCLUSION

For the above reasons, the plaintiffs cannot be relieved of the judgment against them pending their appeal.  The motion is denied.  Because the motion fails, the plaintiffs' request to waive the bond requirement is moot.[51]

IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[51] *See* Mot. ¶¶ 34-35; Opp'n ¶¶ 26-33.